GRETCHEN REGNERY *et al.*, Plaintiffs-Appellants and Cross-Appellees and Counterdefendants, v. DAVID R. MEYERS *et al.*, Defendants and Counter-plaintiffs and Third-Party Plaintiffs (Frederick W. Regnery *et al.*, Third-Party Defendants; Harris Trust & Savings Bank, as Ex'r of the Estate of David C. Meyers, and as Trustee under the Will of Mary R. Meyers Residuary Trust, *et al.*, Intervening Plaintiffs-Appellees and Cross-Appellants; Robert G. Epsteen *et al.*, Appellants and Cross-Appellees; Arvey, Hodes, Costello and Burman, Appellant).

First District (6th Division)   Nos. 1—02—0475, 1—02—0476, 1—02—1031 cons.

Opinion filed December 19, 2003.—Rehearing denied February 18, 2004.

Gary L. Starkman and Erin Fleming Martin, both of Ross & Hardies, of Chicago, for appellant Arvey, Hodes, Costello & Burman.

Robert G. Epsteen, of Chicago, for other appellants.

Richard A. Wohlleber and Joseph P. Lombardo, both of Chapman & Cutler, and Terry M. Grimm, Karen Caraher Quirk, Jared R. Cloud, and Brooke B. Holley, all of Winston & Strawn, both of Chicago, for appellees.

JUSTICE TULLY delivered the opinion of the court:

Plaintiffs, Gretchen Regnery, Verla Regnery, Lynn Regnery, Elisabeth B. Regnery, William H. Regnery II, Peter B. Regnery, Anne Regnery, David B. Regnery, Patrick Regnery and Bank of America N.T. and S.A. (fomerly Security Pacific Bank), brought this action in the circuit court of Cook County against defendants, David R. Meyers and Frederick C. Meyers (hereinafter David and Frederick M., or collectively the Meyerses), seeking damages for breach of fiduciary duty. The trial court found that David breached his fiduciary duties which he owed to plaintiffs and that Frederick induced, participated in and accepted benefits from such breaches. On appeal, this court affirmed in part and reversed in part and remanded with directions.

On remand, the circuit court entered orders allowing certain parties to intervene and allocating plaintiffs' attorney fees. It is from those orders that plaintiffs and other parties now appeal and certain intervenors cross-appeal.

For the reasons that follow, we affirm in part and reverse in part the orders of the circuit court.

## FACTUAL BACKGROUND[1]

Joanna Western Mills Company (hereinafter Joanna) was a family-owned business, incorporated under the laws of Delaware, with its principal place of business in Chicago, Illinois. In 1980 and 1981, Joanna experienced financial difficulties and had a net operating loss of between $2 and $4 million over the course of the two years. In 1982 and 1983, Joanna's financial condition began improv-

---

[1]This opinion recites the facts relevant to this appeal. A full factual background can be found in *Regnery v. Meyers*, 287 Ill. App. 3d 354 (1997).

ing. In 1983, Frederick Regnery began discussing with Henry Regnery the possibility of defendants Frederick and David Meyers, as executives, each purchasing 500 shares of Joanna at $500 per share. Henry agreed to support a sale of 300 shares to each at $500 per share. On September 13, 1983, at a board of directors meeting, Henry proposed the sale to the Meyerses. The board passed a resolution to call a special stockholders meeting for purposes of allowing the sale to the Meyerses. Notice of the special stockholders meeting was mailed to each stockholder of record. The notice informed the stockholders that the meeting was being held for the purpose of approving the sale of 600 shares of company stock to two executives of Joanna.

The special stockholders meeting was held on September 26, 1983. David, acting as trustee of the voting trust, voted the trust's 3,745 shares of stock, which constituted 71% of the company's total shares, in favor of the sale to the Meyerses. The sale of stock to the Meyerses was approved by the stockholders at the meeting by 98.8% of the total shares.

In July, 1987, Gretchen, Anne, Verla, Lynn and Peter filed the present action against defendants. A large percentage of Joanna shareholders who were named in a consolidated suit did not intervene in the present suit and did not assert their own separate claims against defendants. Following a bench trial, the circuit court found that defendant David Meyers breached his fiduciary duties owed to the minority stockholders of Joanna and that defendant Frederick Meyers induced those breaches, participated in them, knowingly accepted benefits from them and engaged in an intentional plan to act in concert with David. Moreover, the trial judge found that the Meyerses received $4,359,900 in profit from David's breaches of fiduciary duties as well as $195,000 in dividends on the stock they wrongfully acquired. The trial court awarded plaintiffs, who were 35.71% stockholders in Joanna at the time of the breach, 35.71% of the amounts obtained by the Meyerses.

On appeal, this court found that the circuit court erred in allowing defendants to retain all but 35.71% of the profits and dividends they received as a result of the breach of fiduciary duty. Upon remand, this court directed the circuit court to order that notice be given to all persons who were Joanna stockholders at the time of the sale of the 600 shares of stock to the defendants. Such notice was to provide that any parties wishing to intervene in the lawsuit file a statement of intent to intervene. This court directed the circuit court to allow all parties to raise any objections they might have to any intervenor and to then determine which additional parties may rightfully join the lawsuit and to join such parties. This court further directed the circuit

court to disgorge defendants of all profits and dividends obtained on the 600 shares of Joanna stock from September 1983 through October 1986, and to award both the original plaintiffs and those plaintiffs allowed to intervene their *pro rata* share of the profits and dividends. Finally, this court directed the circuit court to apply the equitable "common fund doctrine" for purposes of allocating plaintiffs' attorney fees among the original as well as the newly added plaintiffs in this case. *Regnery v. Meyers*, 287 Ill. App. 3d 354 (1997).

Following this court's order, on January 20, 1998, the Meyerses paid the principal amount of the judgment, $4,554,900, plus $734,424.01 in judgment interest and costs. On that same date, the plaintiffs were paid their 35.71% share of these monies, $1,626,555 in principal, plus $493,314.30 in interest, of which $211,986.93 was distributed in attorney fees to Robert Epsteen.

Upon remand, a number of persons who were Joanna stockholders at the time of the sale moved to intervene in the circuit court pursuant to this court's order. Among those who moved to intervene were Alfred Regnery, individually and as independent executor of the Henry Regnery estate, and Harris Bank, as trustee for the Mary R. Meyers Residual Trust (the Trust). The plaintiffs objected to the petitions of Alfred Regnery, the Henry Regnery estate, and 40% of the Mary R. Meyers Residual Trust.

The Trust was originally established by the will of Mary R. Regnery in 1978. The will created a trust for the life benefit of Mary Regnery's husband. The Trust held 1,060 shares of Joanna stock as of September 26, 1983, the date of the sale and the relevant date for intervention set by this court's order. The residuary estate was created upon the death of Mary Regnery's husband in 1989. The residuary estate created five nominally separate trusts in the names of Mary's five children, the Melissa Gibbs Trust, the Margery McGrew Trust, the David Meyers Trust, the Frederick Meyers Trust, and the Michael Meyers Trust. However, four of the five trusts, including those of David and Frederick Meyers, are managed as a common fund. All of Mary Regnery's five children have life interests in the net income of the Trust. The potential contingent beneficiaries who will come into possession of the Trust principal are the spouses of Mary Regnery's children, and/or Mary Regnery's grandchildren, and/or the spouses of those grandchildren, and/or charitable organizations. David and Frederick Meyers are cotrustees, with Harris Bank, of the Trust.

On August 2, 1999, the circuit court ordered that the Henry Regnery estate and the Mary R. Meyers Residual Trust be permitted to intervene as plaintiffs in this case. The court denied Alfred Regnery's petition to intervene.

On November 26, 2001, the circuit court entered an order setting forth the method of final distribution of the disgorged monies, net of the earlier distribution to plaintiffs. On January 15, 2002, the trial court entered an order setting out the exact distribution of the disgorged funds to all the plaintiffs and the amount of attorney fees. Included in the orders of distribution were Harris Bank, as trustee for the residuary trust of Mary R. Meyers, and the Henry Regnery estate. Robert Epsteen was awarded an additional $474,532.71 in attorney fees and Arvey, Hodes, Costello & Burman (AHCB) was awarded $67,718.57 in attorney fees.

## ISSUES PRESENTED FOR REVIEW

On appeal, plaintiffs argue that the trial court erred when it: (1) allowed the Trust to intervene when David and Frederick Meyers are both beneficiaries and trustees; and (2) allowed the estate of Henry Regnery to intervene. Plaintiffs also appeal the distribution order entered by the trial court contending that the formula for distribution of the judgment fund is not congruent with this court's mandate. Plaintiffs appeal the award of attorney fees to Epsteen as well as the award of fees to Arvey, Hodes, Costello & Burman. On cross-appeal, Alfred Regnery contends that the circuit court erred in denying his petition to intervene. Also on cross-appeal, the intervenors contend that the circuit court abused its discretion by applying Epsteen's modified fee agreement with the plaintiffs to determine the award of fees against the intervenors rather than the original agreements between Epsteen and AHCB and plaintiffs.

## OPINION

### The Intervenors

■ We first address plaintiffs' contention that the circuit court erred in allowing both the Henry Regnery estate and the Mary R. Meyers Residual Trust to intervene. We review the circuit court's decision to grant the petitions to intervene under an abuse of discretion standard. See, e.g., *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 58 (2002) (applying abuse of discretion standard to review of petition to intervene in case decided upon summary judgment motion). Plaintiffs' contention that this issue be reviewed *de novo* is without merit.

■ Plaintiffs first contend that the circuit court erred in allowing intervention by the two trusts in which the defendants, David and Frederick Meyers, are beneficiaries and trustees. Plaintiffs maintain that they did not object to the Mary R. Meyers Residual Trust intervening but to the Mary R. Meyers Trust for David Meyers and

the Mary R. Meyers Trust for Frederick Meyers. Plaintiffs assert that each of those trusts holds an interest as to 212 shares (one fifth of the 1,060 shares formerly held by the Mary Meyers Residual Trust). Plaintiffs further assert that David and Frederick Meyers are in fact the trustees with the power to control those trusts and are the sole beneficiaries with vested rights under those trusts. For these reasons, the plaintiffs argue that the circuit court erred in allowing the trusts to intervene as this allowed David and Frederick Meyers to share in the funds that this court had directed them to disgorge.

We find plaintiffs' contentions are without support from the record. As explained above, upon the death of Mary R. Regnery's husband, the Trust was split into five trusts named for each of Mary R. Regnery's five children, including David and Frederick Meyers. However, the will of Mary R. Regnery does not specify how trust property should be allocated among the separate trusts and the record before this court does not show how the Trust property was allocated. Moreover, the will provides that the trustees can make joint investments of funds in the trusts and can hold several trusts as a common fund dividing the net income among the beneficiaries of the several trusts proportionately. Here, four of the five trusts, including the trusts for David and Frederick Meyers, are administered as a common fund. As such, there is no way to separate out a particular investment from the four trusts held as a common fund and determine that one-fourth of that investment benefits a particular beneficiary. Thus, the circuit court could not deny intervention by a portion of the Trust because all of the beneficiaries share equally in the total value of the Trust.

Moreover, according to the will of Mary R. Regnery, David and Frederick Meyers are not the "sole beneficiaries" of the trusts held in their name. All of Mary Regnery's five children have life interests in the net income of the Trust. Each of Mary Regnery's five children was given a power of appointment authorizing them, in their own wills, to direct the trustees to distribute their trusts to their spouse and/or their children and/or charitable organizations. Thus, David and Frederick Meyers are not the "sole" beneficiaries of the Trust. The potential contingent beneficiaries who will come into possession of the Trust principal are Mary Regnery's children's spouses, and/or her grandchildren, and/or the spouses of those grandchildren, and/or charitable organizations.

The record before this court, including the Trust documents as well as the will of Mary R. Regnery, show that four of Mary Regnery's children held their share of the Trust as a common fund so that each of those four children shared in the income from the total value of the Trust. There is no way to separate out any one investment so the

court cannot separate out David and Frederick Meyerses' portions of the Trust's Joanna shares.

Accordingly, we find that the trial court did not err in granting the petition of Harris Bank, as Trustee for the Mary R. Meyers Residual Trust, to intervene.

■ Next, we look at whether the circuit court erred in allowing the estate of Henry Regnery to intervene. Plaintiffs contend that the estate of Henry Regnery should not be allowed to intervene because Henry Regnery "participated" in the breach of fiduciary duties of David and Frederick Meyers. Plaintiffs point to certain writings of Henry Regnery regarding the sale of stock to the defendants as evidence of Henry's participation in the breach of fiduciary duties.

It appears from plaintiffs' argument that they are asserting the Henry Regnery estate should be barred from intervening under the doctrine of unclean hands, which prohibits one seeking equity from taking advantage of his own wrong. See *LaSalle National Bank v. 53rd-Ellis Currency Exchange, Inc.*, 249 Ill. App. 3d 415, 437-38 (1993). In order to determine whether Henry Regnery had "unclean hands" in the stock sale to the defendants, the court will look to the intent of Henry Regnery, not the effect of his actions. *LaSalle National Bank*, 249 Ill. App. 3d at 437-38.

Here, Henry Regnery was one of the trustees of the voting trust that voted the trust's controlling interest to approve the sale of 600 shares of Joanna stock to the defendants at $500 per share. Years after the sale, Henry wrote in a letter to William Regnery that he had "made a serious mistake in making it possible for [the defendants] to go through with [the sale]." Henry also wrote and published that Frederick Meyers had come to him with the proposal that Frederick and David Meyers acquire stock at $500 per share. Henry wrote that Frederick "could be enormously convincing" and that Henry was easily convinced of agreeing to the proposal and that he regretted it later.

It is clear that the actions of Henry Regnery made it possible for the defendants to purchase the Joanna stock for less than the market value. The record, however, merely indicates that Henry was persuaded to vote in favor of the sale to the defendants. The writings do not contain any admissions of bad faith or malicious intent. They merely show that Henry later regretted his actions. There is no evidence that Henry Regnery acted fraudulently or in bad faith.

Accordingly, we find that the circuit court did not abuse its discretion in allowing the estate of Henry Regnery to intervene in this action.

The remaining issue regarding intervenors is raised on cross-appeal. Cross-appellant Alfred Regnery contends that the circuit court

abused its discretion in denying his petition to intervene. Alfred maintains that his declaratory judgment suit should not bar his intervention in this suit with respect to his individual shares of stock.

■ Alfred Regnery was a stockholder of Joanna and was duly appointed "Stockholder's Agent" pursuant to the provisions of an agency and indemnity agreement entered into between Alfred and Joanna on October 31, 1986. After the plaintiffs filed this lawsuit as a class action against the Meyerses, the Meyerses demanded that Alfred, as the stockholder's agent, release them of all claims asserted by the plaintiffs. Thereafter, Alfred filed a declaratory judgment action seeking the court to declare that he was "authorized by the provisions of the Agency and Indemnity Agreement to exercise his discretion by executing and delivering to [the Meyerses] *** a release of all claims being asserted against them." The circuit court granted summary judgment in favor of Alfred Regnery in that case. However, this court reversed that judgment.

In this case, Alfred maintains that he filed the declaratory action in his representative capacity and that he never released nor sought to release his individual claims. The circuit court denied Alfred's petition to intervene based on its finding that Alfred's role in bringing the declaratory action was not neutral. The circuit court stated that Alfred was "clearly opposed to the interests of the *** other stockholders." We agree.

Our review of the record shows that the declaratory judgment filed by Alfred Regnery did not merely seek a declaration of Alfred Regnery's obligations under the agency and indemnity agreement. Rather, the suit sought a declaration that Alfred Regnery had the power to release the Meyerses from the plaintiffs' claims. This position is not neutral; the position is clearly opposed to the interests of the plaintiffs in this suit. Moreover, the circuit court noted that Alfred Regnery had informed the circuit court that he did not want to pursue any rights he had against the Meyers.

Accordingly, we cannot find that the circuit court abused its discretion in denying the petition of Alfred Regnery to intervene in this suit.

## Distribution Formula

■ The plaintiffs also contend on appeal that the circuit court's distribution order is not congruent with this court's mandate and is unfair to the plaintiffs. We disagree.

The mandate from this court ordered the circuit court to disgorge defendants of all profits and dividends on the 600 shares of Joanna stock and "award all plaintiffs, both those who are now parties to this action and those allowed to intervene, their *pro rata* share of such

profits and dividends." We believe that the distribution formula utilized by the circuit court is consistent with this mandate.

Following this court's mandate, the defendants paid the full judgment amount, plus accrued interest. The plaintiffs represent 35.71% of the total shares and they received 35.71% of the judgment and 35.71% of the accrued interest. The remaining monies were held in three separate accounts. At issue here are the "32 Account," which held the remaining principal amount of the judgment, and the "40 Account," which held the remaining accrued interest.

The total number of outstanding shares was 7,483.5 shares. The plaintiffs held 35.71%, or 2,672.36 shares. The intervening parties held 45.38% of the total shares, or 3,396.01 shares. Nonparticipating shares totaled 1,415.13, or 18.91% of the total shares. Thus, after the plaintiffs received their portion of the judgment, the remaining shares totaled 4,811.14. The intervenors represent 71% of the remaining shares (3,396.01/4,811.14) and the circuit court distributed 71% of the "32 Account" and 71% of the "40 Account" to them. The 29% remaining in the accounts was the portion of the judgment allocable to the nonparticipating shares. This amount was equally distributed to both the plaintiffs and the intervenors in the following way: the total participating shares (plaintiffs + intervenors) equals 6,068.37 shares. The plaintiffs represent 44% of the total participating shares (2,672.36/6,068.37). The intervenors represent 56% of the total participating shares (3,396.01/6,068.37). Thus, of the 29% remaining in the "32 Account" and "40 Account," the plaintiffs are entitled to 44% and the intervenors are entitled to 56%.

By plaintiffs' methodology, they would take the total in all of the account plus the 1994 judgment which they received in 1998, and distribute that amount 56% to the intervenors and 44% to the plaintiffs. The problem with this is that it would allow the plaintiffs a greater share of the postjudgment interest than that to which they are entitled. The plaintiffs received their share of the principal and postjudgment interest in 1998. The only portion of the remaining postjudgment interest to which the plaintiffs are entitled is their *pro rata* share of the 29% portion allocable to nonparticipating shares.

We find that the circuit court properly distributed the judgment fund.

## Attorney Fees

This court's mandate directed the circuit court to apply the common fund doctrine to allocate attorney fees among the original plaintiffs and the intervenors. A little background is necessary before our analysis of the award of attorney fees.

The original named plaintiffs in this action executed retention agreements with the law firm of Arvey, Hodes, Costello & Burman (AHCB). The AHCB retention agreement provided that AHCB agreed to represent the plaintiffs for a $75,000 maximum legal fee (excluding costs) through trial. The agreement also provided for a 10% fee bonus payable out of any monies recovered by either litigation or settlement. Irwin Zatz, an attorney at AHCB, was the lead attorney on the case. The plaintiffs were represented by Zatz and AHCB until December 31, 1991, when AHCB was dissolved as a practicing law firm.

Thereafter, Irwin Zatz individually continued to represent the plaintiffs. In January 1993, AHCB and Zatz entered into a settlement agreement in which AHCB released Irwin Zatz, his heirs, legal representatives and assigns from any and all claims that AHCB may have by reason of "any matter or thing whatsoever existing at any time prior to and including the effective date of this Agreement arising out of their relationship as a partner and retired partner of AHCB."

In February 1993, Zatz asked Robert Epsteen to take the case. In 1994, prior to trial, Epsteen and the plaintiffs executed contingency fee agreements that contained the same "10% of any recovery" as the prior agreements executed by AHCB. The trial court issued its final order in September 1994. This court issued its modified opinion in April 1997. Thereafter, in October 1997, Epsteen entered into a modified fee agreement with the plaintiffs whereby Epsteen receives an additional 20% contingency fee of any recovery over $800 per share by the plaintiffs in the intervention proceeding.

The trial court, after hearing argument from all sides, issued its order allocating attorney fees as follows: The intervenors paid Epsteen pursuant to the terms of the modified fee agreement the plaintiffs had entered into with Epsteen. Further, the circuit court awarded AHCB 10% of Epsteen's fees. Epsteen informed the court that pursuant to an agreement he had with Irwin Zatz, he is obligated to pay the heirs of Irwin Zatz $100,000. The circuit court approved the amount and ordered Epsteen to pay AHCB 10% of that amount.

On appeal, Epsteen contends that the circuit court erred in limiting his fees from the intervenors to the terms of his agreement with the plaintiffs. Epsteen maintains the court should have awarded him $33^{1}/_{3}\%$ of the intervenors' judgment.

The intervenors contend that the circuit court correctly applied the common fund doctrine; however, the court erred in ordering the intervenors pay fees pursuant to the modified fee agreement. The intervenors maintain that they should pay Epsteen fees pursuant to the terms of his original agreement with plaintiffs.

Finally, AHCB contends that the trial court erred in determining their award of fees. AHCB asserts that the court misapplied the common fund doctrine when the court concluded that its discretion to award fees was limited by the fee agreement. AHCB maintains that it should receive one-third of all attorney fees received by Epsteen from the original plaintiffs and one-ninth of the total damages recovered on behalf of the intervenors.

■ The common fund doctrine permits a party who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees. *Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235, 659 N.E.2d 909 (1995). "It is now well established that 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.' " *Scholtens v. Schneider*, 173 Ill. 2d 375, 385, 671 N.E.2d 657, 662 (1996), quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 62 L. Ed. 2d 676, 681, 100 S. Ct. 745, 749 (1980). The underlying justification for reimbursing attorneys from a common fund, as explained by the United States Supreme Court in three early cases, is that, unless the costs of litigation are spread to the beneficiaries of the fund, they will be unjustly enriched by the attorney's efforts. See *Sprague v. Ticonic National Bank*, 307 U.S. 161, 166-67, 83 L. Ed. 1184, 1186-87, 59 S. Ct. 777, 779-80 (1939); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 126-27, 28 L. Ed. 915, 918-19, 5 S. Ct. 387, 392-93 (1885); *Trustees of the Internal Improvement Fund v. Greenough*, 105 U.S. 527, 532, 26 L. Ed. 1157, 1160 (1881); see also *Ryan v. City of Chicago*, 274 Ill. App. 3d 913, 654 N.E.2d 483 (1995).

■ Here, the circuit judge used the existing fee agreement between the plaintiffs and Epsteen as a basis for determining the fees to be paid to Epsteen by the intervenors. We do not agree with the plaintiffs or AHCB that the lower court failed to exercise its discretion. While the court acknowledged the hard work of Mr. Epsteen, it was also bound by the principles of equity that underlie the common fund doctrine. The doctrine requires that the costs of litigation are spread to the beneficiaries of the fund. Here, the beneficiaries of the fund are the plaintiffs and the intervenors. The circuit court ordered that the intervenors pay the same attorney fees that the plaintiffs were required to pay pursuant to their agreement with Mr. Epsteen. We find that such a fee award is equitable to all parties. There is nothing in the record which indicates that the intervenors should pay a higher fee than the plaintiffs. Moreover, we find that the circuit court did not abuse its discretion by using the modified fee agreement as this is the

agreement that plaintiffs entered into for the intervention proceedings and this is the fee the plaintiffs paid for any recovery after the intervention proceedings.

Accordingly, we find that the circuit court properly allocated the attorney fees awarded to Mr. Epsteen.

■ Finally, we address the award of fees to AHCB. Plaintiffs entered into a fee agreement with AHCB that provided that plaintiffs pay a $75,000 fee through trial, $25,000 for appeal, and a 10% bonus for any monies recovered by AHCB. Plaintiffs paid the $75,000 and AHCB filed a complaint on plaintiffs' behalf. AHCB dissolved and one of its former partners continued to represent the plaintiffs. AHCB never recovered any monies for the plaintiffs; however, AHCB did contribute to the fund eventually created by initiating the lawsuit. As the circuit court acknowledged, the record indicates that AHCB's contribution was minimal. Accordingly, we cannot say that the circuit court abused its discretion in awarding AHCB 10% of Mr. Epsteen's fees.

Moreover, AHCB's contention that it is entitled to a referral fee of one-third of Epsteen's fees (one-ninth from the fee paid by the intervenors) is without merit. AHCB did not refer the case to Zatz or Epsteen. In fact, AHCB entered into a settlement agreement with Zatz wherein AHCB released Zatz and his heirs from any and all claims. Accordingly, we find that the circuit court erred in awarding AHCB a portion of the fees paid to the heirs of Irwin Zatz and we reverse the circuit court's order only as to the fees paid to AHCB by the estate of Irwin Zatz.

Affirmed in part; reversed in part.

GALLAGHER and SMITH, JJ., concur.