2024 IL App (1st) 240413-U

No. 1-22-0413

Order filed September 6, 2024

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| IN THE INTEREST OF V.M.L, a minor, | ) | |
| | ) | |
| (THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Petitioner-Appellee, | ) | Circuit Court of |
| | ) | Cook County |
| v. | ) | |
| | ) | No. 20 JA 38 |
| My. P.L., | ) | |
| | ) | Honorable |
| Mother-Respondent.) | ) | Patricia M. Martin and |
| | ) | Jennifer Payne, |
| | ) | Judge Presiding. |
| Kate Pilman, | ) | |
| | ) | |
| Former Foster Parent-Appellant. | ) | |

PRESIDING JUSTICE TAILOR delivered the judgment of the court.
Justices Hyman and Carl A. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The juvenile court did not abuse its discretion in denying the petition to intervene.

¶ 2     Appellant Kate Pilman appeals from orders of the juvenile court denying her motion to intervene and denying her motion to reconsider the denial of her motion to intervene. Pilman argues that the juvenile court erred when it determined that she did not have a right to intervene because she did not attach a supplemental motion pursuant to section 2-408(e) of the Code of Civil Procedure. 735 ILCS 5/2-408(e) (West 2022). In addition, she argues that the court abused its discretion when it found that it was not in the best interest of the minor child to be placed back in her care. For the following reasons, we affirm the decision of the juvenile court.

¶ 3                                   BACKGROUND

¶ 4     V.M. is a boy born in September 2019, and is now five years old. In January 2020, the State filed a petition for adjudication of wardship and motion for temporary custody for V.M., alleging he was abused, neglected, and dependent due to his mother's severe psychiatric issues. V.M.'s father is unknown.

¶ 5     The court placed V.M. in the temporary custody of the Department of Children and Family Services (DCFS) in January 2020. V.M. was then placed in the non-relative foster home of Pilman. In July 2020, V.M.'s uncle asked DCFS to remove V.M. from Pilman's home and place V.M. with him. In October 2020, DCFS notified Pilman it was going to remove V.M. and place him with his uncle. Pilman appealed that decision with DCFS and sought a clinical placement review. That review determined the uncle had other foster children in his care, one of whom had a history of sexual behavior and who posed a risk to other children. In November 2020, DCFS decided that V.M. should remain with Pilman

¶ 6     In July 2021, the mother brought a motion to "modify or vacate" the temporary custody order, asking that the court place V.M. in the temporary custody of her brother, V.M.'s same

uncle. On September 14, 2021, V.M.'s uncle also filed a motion to "modify or vacate" the temporary custody order, asking that V.M. be placed in his temporary custody. On September 15, 2021, the trial court adjudicated V.M. dependent pursuant to section 2-4(1)(b) of the Juvenile Court Act (Act) (705 ILCS 405/2-4(1)(b) (West 2022)), as a child without proper care due to the mother's mental disability. Thereafter, in November 2021, Pilman filed a motion to intervene, asking that V.M. remain in her care. The trial court granted that motion to intervene in December 2021.

¶ 7    The trial court proceeded to a dispositional hearing, and it considered the mother's and uncle's motions to modify temporary custody during those hearings. The dispositional hearing began in October 2021 and ended in April 2022. Pilman was represented by counsel and participated in the dispositional hearings.

¶ 8    On May 4, 2022, the trial court denied both the mother's and uncle's motions to modify temporary custody and have V.M. placed with the uncle. The court heard evidence during those dispositional hearings that the uncle had another foster child in his care with sexualized behavior who would pose a serious risk to V.M.  The court entered a dispositional order placing V.M. in the guardianship of DCFS with the right to place V.M. The court then vacated Pilman's intervenor status.

¶ 9    The mother appealed the trial court's denial of her motion to modify temporary custody. In November 2022, this court dismissed the appeal as moot because the temporary custody order had been superseded by the adjudication and dispositional orders, and it was not possible to grant the mother the relief she sought. *In re V.M.L.*, 2022 IL App (1st) 220773-U, ¶¶16-18.

¶ 10    In January 2023, Pilman notified DCFS that she wanted V.M. removed from her home.

V.M. was placed in a new foster home in March 2023, where he remains. In May 2023, the trial court entered a permanency goal of substitute care pending court determination on termination of parental rights, finding that the mother had not made substantial progress toward reunification. In June 2023, the State filed a petition to terminate the mother's parental rights. That termination petition is pending.

¶ 11    On October 30, 2023, Pilman filed her motion to intervene, asking the court to allow her to intervene so that V.M be returned to her care. Pilman alleged that she asked DCFS to remove V.M. from her home in January 2023 because she believed that he should be placed with his uncle. She stated that just prior to the court's dispositional order and order denying the mother's motion to place V.M. in the uncle's care, the uncle had asked DCFS to remove the foster child who posed a risk to younger children from his home. She further alleged that at that time, V.M. had been having visits with the uncle and they developed a bond. Pilman stated that is why she believed that V.M. should be placed with his uncle. She alleged that the private agency refused to consider the uncle as a placement at that point.

¶ 12    In her motion, Pilman argued she was entitled to intervene under section 2-408 of the Code (735 ILCS 5/2-408(a)(b) (West 2022)), which allows for intervention in civil cases "when the representation of an applicant's interest by existing parties is or may be inadequate and the applicant may be bound by an order or judgment in this action," or when an "applicant's claim or defense and the main action have a question of law or fact in common." Pilman claimed she was "about to adopt" V.M. and was "bound by the decision to not return [V.M.] to her care," and was "severely depressed" and had a "hard time coping." On the same date Pilman filed her motion to intervene, the uncle filed a separate motion to intervene in the case, asking that V.M. be placed

with him.

¶ 13    The trial court held a hearing on Pilman's motion to intervene on October 31, 2023. V.M.'s current foster parent was present, and reported to the court that V.M. was doing well in her care and was happy, healthy, and playing baseball and soccer. He was in play therapy and had started kindergarten and was very happy there. The court asked Pilman how she would be bound by any order of judgment in the case.  Her attorney answered, "it's under the order that before she was the foster parent that you were looking at for permanency for possible adoption." The court stated that it never ordered V.M. removed from Pilman's care, and it did not have authority to place V.M. back in her care. Pilman's attorney argued that V.M.'s best interests were important, and that she was asking "for mercy" to figure out V.M.'s best interests. Pilman's attorney claimed DCFS removed V.M. from her home, and the court pointed out that in fact Pilman was the one that asked for V.M. to be removed. The court again stated it had no authority to place V.M. with Pilman, or anyone else and denied her motion to intervene.

¶ 14    Pilman filed a motion to reconsider the court's denial of her intervention motion, where she argued that she should be allowed to intervene under section 2-408 of the Code, as well as section 1-5(2)(c) of the Act, which allows foster parent to intervene when a foster child is removed from their home by DCFS. 735 ILCS 5/2-408(a)(b) (West 2024); 705 ILCS 405/1-5(2)(c) (West 2024)). She also argued that she should be allowed to intervene under subsection 1-5(2)(d) of the Act, which allows for intervention by a foster parent if it is in the child's best interests.

¶ 15    The trial court held a hearing on the motion to reconsider on December 20, 2023. Pilman's attorney argued that a previous foster parent can intervene in a case if the intervention

is in the child's best interests. The assistant public guardian informed the court that Pilman asked DCFS to remove V.M. from her home in January 2023, and when asked if she would be willing to keep V.M. in her home if V.M. were not placed with V.M.'s uncle, Pilman said no. Pilman's attorney stated, "my client would adamantly deny it, but I wasn't there. It is what it is." The State did not take a position on the motion to reconsider.

¶ 16 The court stated that Pilman would not be bound by any order entered by the court, and the pending issue before the court was the State's termination of parental rights petition, which would not affect her. The court reiterated that it did not have authority to place V.M. with a specific foster parent. Pilman said that when she gave her notice to DCFS to have V.M. removed from her home, her landlord wanted to sell the home she lived in, and she had to move. She stated she believed that V.M. was going to be placed with his uncle when she requested V.M. to be removed from her home. The court informed her, "I can't have a foster parent unilaterally decide where a child is placed." The trial court then denied Pilman's motion to reconsider.

¶ 17 The trial court issued a written decision denying Pilman's motion to reconsider. The court outlined the factual and procedural history of the case, the history of V.M.'s uncle's attempt to have V.M. placed with him, and observed that the uncle asked DCFS to remove V.M. from Pilman's care in July 2020. In October 2020, DCFS notified Pilman that V.M. would be removed from her and placed with the uncle. Pilman appealed that decision with DCFS, and DCFS held a clinical placement review, which revealed that another foster child in the uncle's care had a history of sexually predatory behavior towards other children. This occurred three years before Pilman asked that V.M. be removed from her home and placed with the same uncle. The court noted that Pilman filed her motion to intervene nine months after she made the

decision to give up V.M.

¶ 18    The court's decision cited section 2-408(a) of the Code, which allows for intervention where the applicant has an unconditional right to intervene, or when the applicant has an interest in the case that would not be represented by existing parties. 735 ILCS 5/2-408(a) (West 2024). Section 2-408(b) states that the court has discretion to allow intervention when a statute confers a conditional right to intervene, or when the applicant's "claim or defense and the main action have a question of law or fact in common . . ." *Id*. §2-408(b). The decision also cited section 2-408(e), which requires an applicant to file a motion to intervene, along with "the initial pleading or motion which he or she proposes to file." The court found that Pilman did not comply with section 2-408(e) because she did not include the motion she "proposes to file."  *Id*. §2-408(e).

¶ 19    The court's decision then discussed the applicable sections of the Act relating to intervention and its ability to place children in specific placements. Section 1-5(2)(b) of the Act allows a foster parent to petition to intervene for the purpose of "requesting that the minor be placed with the foster parent" when a pending motion to restore a child to a parent's custody is pending.  705 ILCS 405/1-5(2)(b) (West 2024). The court stated that no such motion to restore V.M. to a parent was pending, and that subsection was inapplicable. The court then stated section 1-5(2)(b) otherwise makes clear that the court has no authority to place a child in a specific foster home outside the "narrow exception" created in that section. The court cited to three Illinois appellate cases reversing orders entered in violation of section 1-5(2)(b): *In re M.V.,* 288 Ill. App. 3d 300, 307 (1997); *In re R.M.*, 288 Ill. App. 3d 811, 820 (1997); *In re A.L.*, 294 Ill. App. 3d 441, 447 (1998)). The court then discussed subsections 1-5(2)(a), (c), and (d) of the Act (705 ILCS 405/1-5(2)(a), (c), (d) (West 2024)), which relate to intervention. Subsection (a) allows for

a foster parent to "be heard" by the court, but not to intervene. Subsection (c) grants standing to foster parents who had the child for more than a year "if the minor's placement is being terminated from that foster home." The court stated that Pilman asked V.M. to be removed from her care, and DCFS did not terminate V.M.'s placement with her.

¶ 20    Pilman now appeals from the trial court's denial of her motion to intervene and the court's denial of her motion to reconsider.

¶ 21                                  ANALYSIS

¶ 22    Again, Pilman makes two arguments on appeal. First, she argues that the court committed a mistake of law when it determined that she did not have a right to intervene because she did not attach a supplemental motion pursuant to section 2-408(e) of the Code. 735 ILCS 5/2-408(e) (West 2024). Second, she argues that the court abused its discretion when it found that it was not in the best interest of V.M. to be placed back in her care.

¶ 23    Pilman sought to intervene to request that the juvenile court order V.M. to be placed back in her care.  Both the Public Guardian and the State argue that Pilman's appeal is moot because both the trial court and this court lack the authority to order specific placements for children and therefore, this court cannot grant her effective relief even if she were to be granted intervenor status.  Pilman disagrees and argues that mootness cannot be argued for the first time on appeal, and even if it could, the issue is not moot.

¶ 24    An appeal is moot if "no actual controversy exists or if events have occurred that make it impossible for the reviewing court to grant the complaining party effectual relief." *In re Marriage of Peters–Farrell*, 216 Ill. 2d 287, 291 (2005). Generally, courts do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected

regardless of how those issues are decided. *In re Mary Ann P.*, 202 Ill. 2d 393, 401 (2002). When a decision on the merits would not result in appropriate relief, such a decision would essentially be an advisory opinion. *Berlin v. Sarah Bush Lincoln Health Center*, 179 Ill. 2d 1, 8 (1997). A moot appeal must be dismissed. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 21. Whether a case is moot presents a question of law, which we review *de novo*. *In re James W.*, 2014 IL 114483, ¶ 18.

¶ 25     As a threshold matter, mootness arguments "may be raised at any time" and cannot be forfeited because they relate to a court's authority to hear a given controversy. *In re J.B.*, 204 Ill. 2d 382, 388 (2003) (holding arguments the State forfeited a mootness claim ignored basic principles of law). A reviewing court even has the duty to raise mootness issues *sua sponte* if they are not raised by the parties. *Id*. at 388. It is not appropriate to apply forfeiture to a mootness argument. *Patel v. Illinois State Medical Society*, 298 Ill. App. 3d 356, 364 n.5 (1998).

¶ 26     "The test for mootness is whether the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party." *In re Andrea F.*, 208 Ill. 2d 148, 156 (2003). Neither the State nor the Public Guardian point to any intervening events here, at least for purposes of their mootness argument. The question here is whether, under the Act, Pilman should have been permitted to intervene for the purposes of requesting the court to place V.M. in her care. The issue in this case is not moot as an actual controversy exists. Therefore, we will address the merits of Pilman's claims.

¶ 27     Turning to the merits, the juvenile court denied Pilman's motion to intervene because, *inter alia*, she was requesting relief that the court was not authorized to grant. We review the

court's decision on a petition to intervene under an abuse-of-discretion standard. *Regnery v. Meyers*, 345 Ill. App. 3d 678, 683 (2003). "A trial court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court." *In re A.W.*, 397 Ill. App. 3d 868, 873 (2010).

¶ 28    Section 1-5(2) of the Act includes provisions relating to the participation of foster parents in abuse and neglect proceedings. 705 ILCS 405/1-5(2) (West 2024) A foster parent is given the right to be heard in the case pursuant to subsection 1-5(2)(a) but is not considered a party. *Id*. § 1-5(2)(a). However, subsections 1-5(2)(b), (c) and (d) of the Act allow a foster parent to seek intervention. Relevant here is subsection 1-5(2)(b) of the Act, which states:

> "If after an adjudication that a minor is abused or neglected as provided under Section 2-21 of this Act and *a motion has been made to restore the minor to any parent, guardian, or legal custodian found by the court to have caused the neglect or to have inflicted the abuse on the minor,* a foster parent may file a motion to intervene in the proceeding for the sole purpose of requesting that the minor be placed with the foster parent, provided that the foster parent (i) is the current foster parent of the minor or (ii) has previously been a foster parent for the minor for one year or more * * *. The juvenile court may only enter orders placing a minor with a specific foster parent under this subsection (2)(b) and nothing in this Section shall be construed to confer any jurisdiction or authority on the juvenile court to issue any other orders requiring the appointed guardian or custodian of a minor to place the minor in a designated foster home or facility. (Emphasis added). 705 ILCS 405/1-5(2)(b) (West 2024).

¶ 29    The primary objective in construing a statute is to ascertain and give effect to the intent of

the legislature. *People v. Casas*, 2017 IL 120797, ¶18. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *Id*. A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. *Id*. If possible, the court must not depart from the statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express. *Id*. (citing *People v. McChriston*, 2014 IL 115310, ¶¶ 22–23; *People v. Ellis*, 199 Ill. 2d 28, 39 (2002)).

¶ 30 The plain language of subsection 1-5(2)(b) of the Act is clear. The juvenile court is authorized under the Act to enter an order requiring a guardian or custodian to place a child in specific foster home only in *one* circumstance: when an application to restore a minor to a parent, guardian or legal custodian has been filed by an individual who has previously been found by the court to have abused or neglected the minor, in which case foster parents may intervene in the proceeding for the sole purpose of requesting that the minor be placed in their care. *In re R.M.*, 288 Ill. App. 3d 811 (1997) (juvenile court lacked authority to order removal and specific placement of the minor); *In re M.V.*, 288 Ill. App. 3d 300 (1997) (the court has authority only under section 1–5–(2)(6) to order a specific placement); *In re T.L.C.*, 285 Ill. App. 3d 922 (1996) (court concluded that when guardianship is placed with DCFS, there is no statutory authority permitting the court to dictate to DCFS exactly where custody must be placed).

¶ 31 The narrow circumstances under which a court may order specific foster placements are not present here. 705 ILCS 405/1-5(2)(b) (West 2024). Subsection 1-5(2)(b) applies only to

cases where there is a motion to restore custody of a child to a parent, and it adds the extra condition that the parent seeking restoration of custody must have been "found by the court to have caused the neglect or to have inflicted the abuse on the minor." 705 ILCS 405/1-5(2)(b) (West 2024). Here, V.M. was not adjudicated neglected or abused, but rather adjudicated dependent pursuant to section 2-4(1)(b) of the Act, as a child without proper care due to the mother's mental disability. 705 ILCS 405/2-4(1)(b) (West 2024). Furthermore, as the juvenile court noted, there was no pending motion to restore V.M. to his mother, nor does Pilman argue as such. Rather, the issue pending before the juvenile court is whether the mother's parental rights should be terminated. Accordingly, subsection 1-5(2)(b) of the Act did not authorize the juvenile court to allow Pilman to intervene for the purpose of requesting that V.M. be placed with her. Therefore, the juvenile court did not abuse its discretion when it denied Pilman's motion to intervene.

¶ 32 The court's denial of Pilman's motion to intervene under section 2-408 (735 ILCS 5/2-408 (West 2024)) of the Code was also proper. As discussed, the *only* instance where a juvenile court is authorized under the Act to enter an order requiring a guardian or custodian to place a child in a specific foster home is under the specific circumstance set out in section 1-5(2)(b) of the Act (705 ILCS 405/1-5(2)(b) (West 2024)). That circumstance does not here. Thus, for purposes of section 2-408, no statute grants Pilman a right to intervene, conditionally or unconditionally. Nor has Pilman shown any other basis to intervene under section 2-408.

¶ 33                                     CONCLUSION

¶ 34 For the foregoing reasons, the judgment of the juvenile court is affirmed.

¶ 35 Affirmed.