In the

# United States Court of Appeals
## For the Seventh Circuit

―――――――

No. 03-4170

BLUE CROSS BLUE SHIELD OF ILLINOIS, *et al.*,

*Plaintiffs-Appellants*,

*v.*

JULIA CRUZ,

*Defendant-Appellee.*

―――――――

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 9821—**Amy J. St. Eve**, *Judge*.

―――――――

ARGUED MAY 31, 2007—DECIDED JULY 27, 2007

―――――――

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. This appeal is before us once
again, the Supreme Court having remanded it to us for
further consideration in light of the Court's decision in
*Empire HealthChoice Assurance, Inc. v. McVeigh*, 126 S. Ct.
2121 (2006). The parties have fully briefed the question,
which they answer differently, whether *Empire* requires us
to change our decision, 396 F.3d 793 (7th Cir. 2005), which
had reversed the district court's dismissal of the suit for
want of federal-question jurisdiction. 28 U.S.C. § 1331.

To provide health insurance for federal employees, the federal Office of Personnel Management contracts with insurance carriers such as Blue Cross. The contract with Blue Cross provides that an insured who having received benefits from Blue Cross recovers compensation for the same illness or injury from a third party (for example, as the result of filing a tort claim against that party) must return to Blue Cross so much of the benefits as the compensation offsets. Blue Cross reserves the right not to permit the insured to deduct any part of the attorney's fee that he incurred in obtaining the compensation from the third party. The reason this provision appears in the contract between the government and Blue Cross is that any reimbursement received by Blue Cross must be remitted, minus a service charge, to the federal government.

Blue Cross filed this suit in federal district court against one of its insureds, Cruz (actually Cruz's representative, but we suppress that irrelevant detail). Blue Cross had paid $4,682.20 in benefits to cover injuries that Cruz had sustained in an automobile accident. He had hired his own lawyer to bring a tort suit against the injurer, had recovered $30,000 in a settlement, and had paid his lawyer one-third of that amount as the lawyer's fee. Blue Cross wanted the entire $4,682.20 reimbursed to it, but Cruz argued that under Illinois's common fund doctrine he was entitled to deduct a third as Blue Cross's share of the attorney's fee. In that way, each of the beneficiaries of the lawyer's efforts—Cruz and Blue Cross—would be paying the lawyer the same fraction (one-third) of their respective benefits from his efforts.

The common fund doctrine allows a person who incurs attorney's fees in obtaining a judgment or settlement that confers a benefit on another to deduct a portion of the fee.

E.g., *Bloomer v. Liberty Mutual Ins. Co.*, 445 U.S. 74, 77 (1980); *Scholtens v. Schneider*, 671 N.E.2d 657, 662 (Ill. 1996); *Regnery v. Meyers*, 803 N.E.2d 504, 513 (Ill. App. 2003); *Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Wells*, 213 F.3d 398, 402 (7th Cir. 2000). The theory is that a beneficiary of another's legal efforts should contribute to the cost of those efforts; otherwise they might not be undertaken. In economic terms, the successful plaintiff in such a case confers (if he is not compensated) "external" (to his pocketbook) benefits, which he has no incentive to do unless he is compensated and they therefore are internalized to him. Cruz's suit produced a benefit not only to himself but also to Blue Cross, so Cruz believed that the common fund doctrine entitled him to deduct part of his attorney's fee from the repayment demanded by Blue Cross.

Blue Cross disagreed. It does not *want* to create the incentive that the common fund doctrine provides. It (or the Treasury) must like the tradeoff between fewer tort recoveries by insureds and a larger share of each recovery. At any rate, the contract is explicit that the insured is to have no right to common fund treatment, and Blue Cross contended that the Federal Employees Health Benefits Act, 5 U.S.C. §§ 8901 *et seq.*, which authorized the Office of Personnel Management to make the contract in this case, preempts any state law that might prevent enforcement of a term of the contract relating to benefits or coverage. For section 8902(m)(1) provides that "the terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans."

Ordinarily, however, preemption is a defense, and the anticipation of a federal defense does not entitle the plaintiff to bring a suit not otherwise within federal jurisdiction in federal court, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987), as Blue Cross did. But Blue Cross argues that the Act's preemption provision, quoted in the preceding paragraph, is so broad that it extinguishes any state contract law relating to the insurance contract, so that Blue Cross's claim *had* to arise under federal law, presumably a federal common law of contracts that are governed by the Federal Employees Health Benefits Act. In the alternative, it argues that the contract between the government and it involves a unique federal interest that has to be protected against conflicting state laws, such as Illinois's common fund doctrine, *Boyle v. United Technologies Corp.*, 487 U.S. 500, 507 (1988), and that achieving this purpose requires that all disputes arising from the contract be resolved under federal common law.

Under either the "complete preemption" or "unique federal interest" approach, Blue Cross's suit would arise under federal law and thus be within the jurisdiction of the district court. *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6-8 (2003); *Caterpillar Inc. v. Williams*, *supra*, 482 U.S. at 392-93; *Illinois v. City of Milwaukee*, 406 U.S. 91, 100 (1972). The district judge rejected both approaches, however, and so dismissed the suit for want of federal jurisdiction. We reversed, and it is our order reversing the district court that the Supreme Court has directed us to reconsider.

*Empire* arose from a suit by a health insurer against an insured who had recovered tort damages but refused to reimburse the insurer, on the ground that his damages did not cover the injury for which he had received benefits from the insurer. The Supreme Court, resolving an

intercircuit conflict that the Court identified our decision as being on the wrong side of, held that the suit did not arise under federal law. 126 S. Ct. at 2130. With respect to "unique federal interest"—the only basis on which Blue Cross persists in arguing for federal jurisdiction—the Court ruled that the dispute between insurer and insured in the *Empire* case should not be placed "under the complete governance of federal law, to be declared in a federal forum . . . . The state court in which the personal-injury suit was lodged is competent to apply federal law, to the extent it is relevant, and would seem best positioned to determine the lawyer's part in obtaining, and his or her fair share in, the tort recovery." *Id*. at 2137. In attempting to distinguish *Empire*, Blue Cross fastens on the end of this passage, and argues that while there may be no transcendent federal interest in "the lawyer's part in obtaining, and his or her fair share in, the tort recovery"—which were the issues over which the insurer and the insured were quarreling in *Empire*—there is a transcendent interest in whether a state's common fund doctrine should be allowed to override a term in the insurance contract, which was not an issue in *Empire*.

That is to read the majority opinion too narrowly, and in any event ignores the principle that jurisdictional provisions should be simple and clear so that a party is not placed in the position of filing a suit in one court only to discover after years of litigating there that it has to start over in another court because the first court lacked jurisdiction. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202-03 (1988); *Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995); *Unique Concepts, Inc. v. Manuel*, 930 F.2d 573, 575 (7th Cir. 1991); *Coté v. Wadel*, 796 F.2d 981, 983 (7th Cir. 1986); *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1183 (9th Cir. 2004). On

Blue Cross's submission, if a fight over an insured's common fund defense involves messy, picky issues, such as the reasonableness of the attorney's fee paid by the plaintiff, there is no federal jurisdiction, while if the insurer is arguing for preemption of all common fund defenses it can sue in federal court.

One reason the Court gave in *Empire* for rejecting a federal common law of federal employees' health benefits is that a common fund defense will often involve a disagreement merely over the value to the insurer of the insured's efforts in his third-party suit, and that is hardly an issue on which a federal rule is necessary. Our case involves the broader issue of the applicability of the common fund doctrine in light of the contract, which purports to entitle Blue Cross to reject the doctrine. Another reason the Court gave for its result in *Empire* was that the contracts between the Office of Personnel Management and the insurers allow an insurer to enforce the insured's third-party claim against the third party directly, and if the insurer followed that route his right to reimbursement would depend entirely on the third party's tort liability; no reimbursement or common fund issue would be presented, because the insurer would be paying the attorney's fee. 126 S. Ct. at 2133 n. 4, 2136. That does not mean that *only* in such a case would the insurer be confined to state court. A reason is not a holding. So we must press on.

The jurisdictional holding in our previous opinion was based on a belief that Congress in the Federal Employees Health Benefit Act had wanted federal employees to have the same benefits under their health plan no matter what state they were in, so that if they moved from one state to another they would not have to worry that their entitlement had changed. That was an argument for regulating

the contracts between the insurers and the government by a uniform body of contract principles, and thus by a federal common law of contracts. The Supreme Court distinguished, however, between benefits and reimbursement. 126 S. Ct. at 2132. The amount of benefits is determined by the plan and is indeed uniform across states and is unaffected by the common fund doctrine. That doctrine just affects how much of a tort judgment or other judgment against (or settlement with) a third party the plaintiff gets to keep and how much he must give the insurer. The disuniformity that results is not a disuniformity in benefits.

The beneficiary-litigant can, it is true, be made worse off by suing, if he has a disappointing result. Suppose an insured who incurred medical expenses of $40,000 paid for by Blue Cross sued his injurer and settled with him for $50,000 and his lawyer's fee was $20,000. In both a common fund state and a state that has no common fund doctrine, the plaintiff would have insurance benefits of $40,000. Suppose the common fund state would (as Cruz assumed in deducting one-third of his attorney's fee from the reimbursement to Blue Cross) allow him to deduct as much of his attorney's fee as was proportionate to the insurer's benefit. In our hypothetical case, this would translate into a deduction of $16,000 (80 percent of the fee because the insurer received 80 percent of the settlement proceeds—$40,000 out of the total of $50,000). So the plaintiff would pay the insurance company $24,000 ($40,000 - $16,000), retaining $6,000 for himself ($50,000 - $20,000 - $24,000), while the identical plaintiff in the non-common-fund state would end up $10,000 in the hole, because he would have to pay his lawyer $20,000 and repay Blue Cross $40,000. But that would be due not to a difference in benefits between federal employees living in the two states but to the insured's having gambled on obtaining a sufficiently large

tort judgment or settlement to offset his reimbursement obligation. Suppose the tort settlement had been not $50,000 but $500,000 and the attorney's fee had been $200,000. After reimbursing the insurer $40,000 and paying the attorney, the insured in the non-common-fund state would end up with $260,000 ($500,000 - $40,000 - $200,000), compared to only $40,000 had he not sued.

Thus the *benefits* are uniform, though the net financial position of an insured who has a potential tort claim is not but instead depends on the state liability rules applicable to his tort claim, including rules ancillary to liability such as the common fund doctrine. When "benefits" are understood to include every financial incident of an illness or injury, national uniformity is unattainable without a federal takeover of the entire tort system.

We conclude that the district court's judgment, dismissing Blue Cross's suit for want of federal jurisdiction, must be affirmed, and Blue Cross will have to start over in state court—where it can if it wishes plead preemption, based on the contract, as a defense to Cruz's defensive invocation of the common fund doctrine. We shall not speculate on the outcome, but we shall try to offer some guidance to the parties. Blue Cross will be able to argue before the state court that the Federal Employees Health Benefits Act should be interpreted to bar a state from forbidding waiver of the common fund doctrine by the contracts that the Office of Personnel Management makes with health insurers, such as Blue Cross. Cf. *Administrative Committee of Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Varco*, 338 F.3d 680, 690 (7th Cir. 2003). In so arguing, however, Blue Cross will have to contend with *Hillenbrand v. Meyer Medical Group, S.C.*, 720 N.E.2d 287, 294 (Ill. App. 1999), where the Illinois Appellate Court held the opposite,

and also with the possibility left open in *Administrative Committee of Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Varco*, *supra*, 338 F.3d at 691, that the *federal* common fund doctrine is applicable instead of the state doctrine and may override the contracts.

Blue Cross will also be able to argue that the rule of Illinois law that makes waivers of the state common fund doctrine unenforceable, see *Scholtens v. Schneider*, *supra*, 671 N.E.2d 662-63, 664-65, being premised on the notion that the right to an attorney's fee payable out of the common fund (that is, a tort recovery with more than one beneficiary, including at least one not represented by the lawyer who created the fund) belongs to the attorney rather than to his client, e.g., *Bishop v. Burgard*, 764 N.E.2d 24, 31-32, 33-34 (Ill. 2002); cf. *Obin v. District No. 9*, 651 F.2d 574, 582 (8th Cir. 1981); *White v. New Hampshire Department of Employment Services*, 629 F.2d 697, 703 (1st Cir. 1980), reversed on other grounds, 455 U.S. 445 (1982), is inapplicable in the present case because the attorney is not a party. But then Blue Cross will have to reckon with cases like *Scholtens* and *Hillenbrand* which hold that this makes no difference. It is true that in *Administrative Committee of Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Varco*, *supra*, 338 F.3d at 690-91, we suggested that with the lawyer out of the case there might be no basis for invocation of the common fund doctrine. But there, unlike the situation in the two Illinois cases, the lawyer had been paid in full. In the present case, so far as appears, the lawyer had not been paid when Blue Cross sued and Cruz interposed the common fund defense. In any event, *Wal-Mart* appears to be in considerable tension with *Scholtens* and *Hillenbrand*, neither of which suggests that the presence or absence of the lawyer bears on the issue of waiver.

These are difficult questions, so the state court, we're afraid, will have its work cut out for it. We lack jurisdiction to try to answer them.

AFFIRMED.


A true Copy:

    Teste:


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*