309 P.3d 924

**Matthew KOBOLD, a single man, Plaintiff/Counterdefendant/Appellee,**

v.

**The AETNA LIFE INSURANCE COMPANY, a foreign insurer, Third–Party Defendant/Appellant.**

**No. 1 CA–CV 12–0315.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 5, 2013.

Neal S. Sundeen and Knapp & Roberts, P.C. by David L. Abney, Scottsdale, Co-counsel for Plaintiff/Counterdefendant/Appellee.

Brownstein Hyatt Farber Schreck, LLP by John C. West, Phoenix, Attorneys for Third-party Defendant/Appellant.

## OPINION

SWANN, Judge.

¶ 1 Arizona law generally forbids subrogation in personal injury cases. This case presents the question whether 5 U.S.C. § 8902(m)(1) of the Federal Employee Health Benefits Act ("FEHBA") preempts that Arizona law. We answer the question in the negative, and hold that Arizona law barring subrogation governs this dispute between an injured insured and his FEHBA insurer.

### FACTS AND PROCEDURAL HISTORY

¶ 2 In October 2006, Kobold, a federal employee, was injured in a motorcycle accident. At the time of the accident, Kobold was entitled to health care benefits under an insurance plan ("Plan") governed by the FEHBA. The carrier for the Plan, Aetna, paid Kobold's medical providers $24,473.53 for his treatment related to the accident.

¶ 3 Kobold brought a negligence action against the parties allegedly responsible for the accident, and eventually settled the case for $145,000. Under the terms of the Plan, Aetna had a right to subrogation and a right to reimbursement in the event that Kobold recovered from a responsible third party.[1] Aetna asserted a lien on the settlement proceeds for the medical expenses it had paid, and Kobold disputed Aetna's entitlement to reimbursement. The alleged tortfeasors paid $120,526.40 of the settlement sum to Kobold, deposited the remaining $24,473.53

---

1. The Plan provided:

When you receive money to compensate you for medical or hospital care for injuries or

with the superior court, and filed an interpleader action against Kobold and Aetna.

¶4 In the interpleader action, Kobold and Aetna filed cross-motions for summary judgment in which they disputed the preemptive effect of 5 U.S.C. § 8902(m)(1), which provides that certain types of FEHBA contract terms preempt state laws. Concluding that the United States Supreme Court had "spoken on this very issue" in *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006), the superior court found no preemption, granted summary judgment in favor of Kobold, and awarded him attorney's fees and costs. Aetna timely appeals. We have jurisdiction under A.R.S. § 12–2101(A)(1).

## DISCUSSION

¶5 The single issue presented by this appeal is whether the Plan's subrogation and reimbursement provision falls within the scope of 5 U.S.C. § 8902's preemption clause, which provides that FEHBA contract terms that

relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1).[2]

¶6 If the Plan's subrogation and reimbursement provision falls within the statute's

illness caused by another person, you must reimburse us for any expenses we paid.

....

You specifically acknowledge our right to subrogation. When we provide health care benefits for injuries or illnesses for which a third party is or may be responsible, we shall be subrogated to your rights of recovery against any third party to the extent of the full costs of all benefits provided by us, to the fullest extent permitted by law ....

You also specifically acknowledge our right of reimbursement. This right of reimbursement attaches, to the fullest extent permitted by law, when we have provided health care benefits for injuries or illnesses for which a third party is or may be responsible and you and/or your representative has recovered any amounts from the third party or any party making payments on the third party's behalf. By providing any benefit under this Plan, we are granted an assignment of the proceeds of any settlement, judgment or other payment received by

preemption clause, then the provision governs and Aetna is entitled to reimbursement. But if the Plan's provision does not fall within the preemption clause, then Arizona law applies and makes the provision void. *E.g., Allstate Ins. Co. v. Druke,* 118 Ariz. 301, 304, 576 P.2d 489, 492 (1978) (explaining that antisubrogation rule protects insureds whose medical coverage may not indemnify them for all aspects of their loss, and does not affect rate schedules because insurers still receive the full benefit of the premiums paid).

¶7 Our review is de novo. *Ballesteros v. Am. Standard Ins. Co. of Wis.,* 226 Ariz. 345, 347, ¶7, 248 P.3d 193, 195 (2011) (summary judgment and statutory interpretation are reviewed de novo); *State Farm Mut. Auto. Ins. Co. v. Connolly,* 212 Ariz. 417, 418, ¶4, 132 P.3d 1197, 1198 (App.2006) (insurance contract interpretation is reviewed de novo); *Hutto v. Francisco,* 210 Ariz. 88, 90, ¶7, 107 P.3d 934, 936 (App.2005) (federal preemption is reviewed de novo).

## I. MCVEIGH DID NOT DECIDE WHETHER CONTRACT–BASED REIMBURSEMENT RIGHTS FALL WITHIN § 8902'S PREEMPTION CLAUSE.

¶8 As an initial matter, we disagree with Kobold's argument and the superior

you to the extent of the full cost of all benefits provided by us. Our right of reimbursement is cumulative with and not exclusive of our subrogation right and we may choose to exercise either or both rights of recovery.

2. We note that though the FEHBA may bear some similarities to the Employee Retirement Income Security Act ("ERISA"), the FEHBA's preemption clause is materially different from the ERISA's preemption clause. The ERISA's preemption clause, 29 U.S.C. § 1144(a), provides that the provisions of the ERISA itself—not provisions of ERISA contracts—are preemptive. We therefore limit our opinion to FEHBA cases. *But see Botsford v. Blue Cross & Blue Shield of Mont., Inc.,* 314 F.3d 390, 393–94 (9th Cir.2002) ("The new [FEHBA preemption] provision closely resembles ERISA's express preemption provision, and precedent interpreting the ERISA provision thus provides authority for cases involving the FEHBA provision." (footnote omitted)).

court's conclusion that the Supreme Court's decision in *McVeigh* resolved the issue before us. *McVeigh* held that § 8902(m)(1) does not provide a basis for federal jurisdiction over carrier reimbursement disputes because (1) a right to reimbursement arises from the contract and not from the FEHBA itself, and (2) the statute does not purport to replace any and all state laws that in some way bear on FEHBA plans. 547 U.S. at 696–98, 126 S.Ct. 2121. The Court expressly declined to decide whether the statute supersedes state laws governing subrogation and reimbursement. *Id.* at 698, 126 S.Ct. 2121. Indeed, the Court affirmatively recognized the potential for alternative statutory interpretations:

Section 8902(m)(1) is a puzzling measure, open to more than one construction, and no prior decision seems to us precisely on point. Reading the reimbursement clause in the master [insurance] contract as a condition or limitation on "benefits" received by a federal employee, the clause could be ranked among "[contract] terms ... relat[ing] to ... coverage or benefits" and "payments with respect to benefits," thus falling within § 8902(m)(1)'s compass. On the other hand, a claim for reimbursement ordinarily arises long after "coverage" and "benefits" questions have been resolved, and corresponding "payments with respect to benefits" have been made to care providers or the insured. With that consideration in view, § 8902(m)(*l*)'s words may be read to refer to contract terms relating to the *beneficiary's* entitlement (or lack thereof) to Plan payment for certain health-care services he or she has received, and not to terms relating to the carrier's postpayments right to reimbursement.

*To decide this case, we need not choose between those plausible constructions.* If contract-based reimbursement claims are not covered by FEHBA's preemption provision, then federal jurisdiction clearly does not exist. But even if FEHBA's preemption provision reaches contract-based reimbursement claims, that provision is not sufficiently broad to confer federal jurisdiction.

*Id.* at 697–98, 126 S.Ct. 2121 (first alteration and second emphasis added). We therefore

address the question as one of first impression in Arizona.

## II. SECTION 8902'S PREEMPTION CLAUSE DOES NOT PREEMPT ARIZONA LAW GOVERNING CONTRACT–BASED SUBROGATION RIGHTS.

■ ¶ 9 We begin by noting that preemption is disfavored, and that when two plausible readings of a statute are possible, "we would nevertheless have a duty to accept the reading that disfavors pre-emption." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005). Section 8902(m)(1) provides that contract terms that "relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits)" preempt state law. The operative terms are "relate to," "coverage," and "benefits." We examine each in turn.

¶ 10 First, the term "relate to" generally means "having a connection with." *Botsford,* 314 F.3d at 394 (interpreting latter half of § 8902(m)(1), which provides for preemption of any state law that "relates to" health insurance or plans). We construe "relate to" as requiring a direct and immediate relationship, because "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course, for 'really, universally, relations stop nowhere.'" *Roach v. Mail Handlers Benefit Plan,* 298 F.3d 847, 849–50 (9th Cir.2002) (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)).

¶ 11 Next, "coverage" means the scope of the risks insured under a plan or policy. Black's Law Dictionary 394 (8th ed.2004) (defining "coverage" as "[i]nclusion of a risk under an insurance policy; the risks within the scope of an insurance policy"); *see also,* e.g., *Kepner v. W. Fire Ins. Co.,* 109 Ariz. 329, 330, 509 P.2d 222, 223 (1973) (analyzing scope of risks contemplated by homeowner's insurance policy coverage). Nothing in the Plan's subrogation provision purports to affect the scope of risk that Aetna accepted,

and we therefore conclude that the provision does not relate to coverage.

¶ 12 Finally, the term "benefits" means the financial assistance that the insured receives as a consequence of the coverage. Black's Law Dictionary 167 (defining "benefit" as "[f]inancial assistance that is received from ... insurance ... in time of sickness, disability, or unemployment"). In this context, we read the term "benefits" to include payments by the carrier on behalf of the insured, not payments to the insured by third parties. Indeed, even where subrogation is allowed by Arizona statute, we have read the term "benefits" not to include tort settlement proceeds. In *Arizona Health Care Cost Containment System v. Bentley*, 187 Ariz. 229, 928 P.2d 653 (App.1996), we considered the right of subrogation in favor of Arizona's Medicaid program created by A.R.S. § 36–2903. Though the statute prescribed a right to assignment of "all types of medical benefits" to which a person was entitled, we rejected the attempt to extend the term to include tort settlements, noting that "[t]he term 'medical benefits' ordinarily means payments for medical treatment to which a person has some entitlement by contract or statute." *Id.* at 232, 928 P.2d at 656.

¶ 13 Here, the fact that Aetna's contractual right to reimbursement is *triggered* by the payment of benefits does not mean that it "relate[s] to the nature, provision, or extent of" benefits. The "benefits" to which Kobold was entitled under the Plan were not dependent on recovery from a third party—they existed independently. Kobold would have been entitled to the same benefits had he never even brought an action for damages. "When 'benefits' are understood to include every financial incident of an illness or injury, national uniformity is unattainable without a federal takeover of the entire tort system." *Blue Cross Blue Shield of Ill. v. Cruz ("Cruz II")*, 495 F.3d 510, 514 (7th Cir.2007).

¶ 14 We therefore conclude that the Plan's subrogation and reimbursement provision falls outside the scope of § 8902(m)(1). The provision creates a contingent right to repayment in favor of Aetna. It bears no immediate relationship to the scope of Kobold's coverage under the Plan or his receipt of benefits under that coverage, because it has no effect on Kobold's entitlement to receive financial assistance from Aetna when he suffers injury or illness contemplated by the Plan. Though the provision would affect Kobold's net financial position in some circumstances, it does not affect his right to coverage and receipt of benefits, nor is it essential to the uniformity of FEHBA coverage and benefits available to eligible employees nationwide. *See Cruz II*, 495 F.3d at 513 ("The amount of benefits is determined by the plan and is indeed uniform across states and is unaffected by [Illinois'] common fund doctrine. That doctrine just affects how much of a tort judgment or other judgment against (or settlement with) a third party the plaintiff gets to keep and how much he must give the insurer. The disuniformity that results is not a disuniformity in benefits.").

¶ 15 We reject Aetna's argument that we must defer to the contrary interpretation provided by the Office of Personnel Management ("OPM"), the federal agency in charge of contracting with FEHBA carriers, in its letter addressed to FEHBA carriers.[3] The letter does not appear to be the result of a formal rulemaking or adjudication process, and we see nothing in the FEHBA to indicate that Congress intended to delegate to the OPM the authority to make determinations having the force of law. Therefore, the letter does not command the deference prescribed by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1361 (Fed.Cir.2005). Nor are we otherwise required to accept the letter's interpretation. When *Chevron* deference does not apply, we need not defer to an agency's interpretation of a statute it administers unless the agency has conducted a careful analysis and its position has been consistent, reflects agency-wide policy, and is

---

**3.** We are also not persuaded by the contrary interpretations advanced by courts in some other jurisdictions, such as the Missouri Court of Appeals in *Nevils v. Group Health Plan, Inc.*, 2012 WL 6689542 (Mo.Ct.App.2012).

reasonable. *Id.* at 1365–66. The OPM's letter does not reflect the same term-by-term analysis of the statute that we have performed. Moreover, the letter is recent (dated June 2012), itself acknowledges that it was drafted in response to other jurisdictions' interpretations of the statute, and does not support with evidence its claim that OPM has "consistently recognized" the interpretation it advances.

## CONCLUSION

¶ 16 We affirm the grant of summary judgment in favor of Kobold. Kobold requests attorney's fees on appeal pursuant to A.R.S. § 12–341.01. In our discretion, we deny Kobold's request. As the prevailing party, Kobold is entitled to an award of costs pursuant to A.R.S. §§ 12–341 and–342, upon his compliance with ARCAP 21.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge and KENT E. CATTANI, Judge.