RICHARD B. TEITELMAN, Judge.
Jodie Nevils (Appellant) filed suit against Group Health Plan, Inc., (GHP) and ACS Recovery Services, Inc., (ACS) (collectively Respondents) after Respondents enforced a subrogation lien against Nevils’s settlement of a personal injury claim. The trial court, consistent with Buatte v. Gencare Health Sys., Inc., 989 S.W.2d 440 (Mo.App.1996), entered summary judgment in favor of Respondents on grounds that 5 U.S.C. section 8902(m)(l) of the Federal Employee Health Benefits Act (“FEHBA”) preempts Missouri law prohibiting subrogation. Nevils asserts that FEHBA does not preempt state law barring subrogation of personal injury claims because subrogation does not “relate to the nature, provision, or extent of coverage or benefits.” This Court holds that FEH-BA does not preempt Missouri law barring subrogation of personal injury claims. The judgment is reversed, and the case is remanded.
I. Facts
GHP entered into contracts with the federal Office of Personnel Management (OPM) to provide health insurance to federal employees pursuant to FEHBA. The contract directs GHP to seek reimbursement or subrogation when an insured obtains a settlement or judgment against a *453 tortfeasor for payment of medical expenses. Nevils was a federal employee with medical insurance offered through a federal employee health benefit plan carried by GHP.
Nevils was injured in an automobile accident. GHP paid Nevils’s resulting medical bills. Nevils then recovered a personal injury settlement from the tortfeasor responsible for the accident. GHP, through its agent ACS, asserted a lien against Nev-ils’ settlement in the amount of $6,592.24, seeking reimbursement or subrogation for its payment of Nevils’ medical bills resulting from the accident. Nevils satisfied the lien.
Nevils filed a class action petition for damages on behalf of himself and others similarly situated against GHP alleging violation of the Missouri Merchandising Practices Act; unjust enrichment; conversion; and seeking injunctive relief. All claims were based on the premise that Missouri law does not permit the subrogation of tort claims. GHP removed the case to federal court. Nevils filed a motion to remand the case to state court. The federal district court sustained Nevils’ motion on the ground that there was no federal jurisdiction because Buatte held that the FEHBA preempts Missouri law barring subrogation.
Following remand to the state court, ACS intervened in the case. Respondents filed a motion for summary judgment. Respondents, relying on Buatte, asserted that FEHBA preempted Missouri’s anti-subrogation law. The trial court entered judgment for Respondents. This appeal followed.
II. Standard of Review
Nevils’ sole point on appeal asserts that the trial court erred in entering summary judgment in favor of Respondents because FEHBA does not preempt Missouri law barring subrogation of personal injury claims. This Court’s standard of review for an appeal of a summary judgment regarding a legal issue is de novo. ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993).
III. Analysis
Missouri law generally prohibits subrogation in personal injury cases by barring insurers from obtaining reimbursement from the proceeds an insured obtains following a judgment against a tortfeasor. See Benton House, LLC v. Cook & Younts Ins., Inc., 249 S.W.3d 878, 882 (Mo.App.2008). Subrogation in personal injury cases is considered to be against public policy because it amounts to an impermissible assignment of the insured’s right to a cause of action for suffering a personal injury. See Hays v. Mo. Highways & Transp. Comm’n, 62 S.W.3d 538, 540 (Mo.App.2001). Therefore, insurance policies with reimbursement or subrogation clauses are invalid under Missouri law. Buatte, 939 S.W.2d at 442.
Although Missouri law generally prohibits subrogation of personal injury claims, FEHBA’s preemption clause, 5 U.S.C. section 8902(m)(1), applies to this case and provides:
The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.
Resolution of the issue in this case requires this Court to determine whether Respondents’ asserted right to subrogation “relate[s] to the nature, provision or extent of coverage or benefits.”
*454 The Supremacy Clause of the United States Constitution provides that state laws and constitutional provisions are preempted when in conflict with federal laws. See Johnson v. State, 866 S.W.3d 11, 26-27 (Mo. banc 2012). Consideration of issues arising under the Supremacy Clause “start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress.” Cipollone v. Liggett Group, Inc., 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). When a federal statute regulates an area that is traditionally subject to state authority, courts “should be reluctant to find preemption.” CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). Preemption analysis, therefore, “is informed by two presumptions about the nature of preemption.” City of Belton v. Smoky Hill Ry. & Historical Soc., Inc., 170 S.W.3d 429, 434 (Mo.App.2005), quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). First, it is presumed that the states’ historic police powers are not preempted unless it is the clear intent of Congress. Id. Second, a court’s analysis of the scope of a statute’s preemption is determined by the congressional purpose in enacting the statute. Id. When two plausible readings of a statute are possible, “we would nevertheless have a duty to accept the reading that dis-favors preemption.” Bates v. Dow AgroSciences, LLC, 544 U.S. 431, 449, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005).
In Buatte, the Missouri court of appeals held that FEHBA preempted Missouri’s law against subrogation because the insurer’s right to reimbursement of paid medical bills relates to the “nature, provision, or extent of coverage or benefits.” Buatte, 939 S.W.2d at 442. The Buatte court reasoned that “prohibiting [the carrier] from seeking reimbursement would clearly differ the extent of coverage or benefits.” Id. Buatte rested on the premise that sub-rogation “relates to” the insurance coverage and benefits. Other jurisdictions have followed the Buatte rationale. See, e.g., Thurman v. State Farm Mut. Auto. Ins. Co., 278 Ga. 162, 598 S.E.2d 448, 451 (2004); Aybar v. New Jersey Transit Bus Operations, Inc., 305 N.J.Super. 32, 701 A.2d 932, 937 (1997) N.J.App.Div.
The continued validity of Buatte is called into question by the United States Supreme Court’s decision in Empire Health-choice Assurance Inc. v. McVeigh, 547 U.S. 677, 698, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006). In Empire, the Supreme Court held that the FEHBA preemption provision did not provide for complete preemption of state law so as to confer federal jurisdiction and, as a result, an insurance carrier’s claims raised only state law issues. Id. The issue in Empire was whether FEHBA completely preempted state law in all insurance carrier disputes arising under the statute. Although the Supreme Court expressly declined to determine whether the statute preempts state subro-gation laws two aspects of the Supreme Court’s analysis are relevant to Nevils’ claim.
First, Empire recognized that the FEH-BA preemption clause is subject to plausible, alternate interpretations. Id. at 697, 126 S.Ct. 2121. The Supreme Court noted that the clause “was open to more than one construction” and its “words may be read to refer to contract terms relating to the beneficiary’s entitlement (or lack thereof) to [the insurance plan’s] payment for certain health-care services [the beneficiary] has received, and not to terms relating to the carrier’s post-payments right to reimbursement.” Id. at 698, 126 S.Ct. 2121. The Supreme Court also noted that the “choice-of-law prescription is unusual *455 in that it renders [superior] preemptive contract terms in health insurance plans, not provisions enacted by Congress[ ]” and that such an “unusual order warrants [a] cautious interpretation.” Id. Empire establishes that the FEHBA preemption clause is susceptible to reasonable, alternate interpretations. The fact that the preemption clause is susceptible to alternate interpretations implicates the presumption against preemption noted in Bates, in which the Supreme Court noted that when two plausible readings of a statute are possible, “we would nevertheless have a duty to accept the reading that disfavors preemption.” Bates, 544 U.S. at 449,125 S.Ct. 1788 (2005).
Second, the Supreme Court distinguished the provision of insurance coverage and benefits to an insured from an insurer’s right to subrogation. Specifically, the Supreme Court noted that while FEHBA contains a preemption clause displacing state law on issues relating to coverage and benefits, FEHBA “contains no provision addressing the subrogation or reimbursement rights of carriers.” Id. at 683, 126 S.Ct. 2121. This distinction is important because Buatte is premised on the conclusion that, pursuant to the FEH-BA preemption clause, an insurer’s contractual right to subrogation under a FEHBA insurance plan relates to “the nature, provision, or extent of coverage or benefits.” If an insured’s coverage and benefits are separate from the insurer’s contractual right to subrogation, then the right to subrogation does not “relate to” coverage and benefits and state subrogation law is not preempted.
The distinction between insurance benefits and subrogation was further explained in Blue Cross Blue Shield of Illinois v. Cruz, 495 F.3d 510 (7th Cir.2007), where the court noted that Empire “distinguished ... between benefits and reimbursement” and reasoned that the amount of benefits to which an insured is entitled is established by the insurance contract while state law regarding subrogation simply affects the amount of a tort judgment the plaintiff gets to keep and how much he or she must give the insurer. Id. at 512. Following this rationale, the court then noted that if the term “benefits” as used in the FEHBA preemption clause is understood to include every financial incident of an illness or injury, then “national uniformity is unattainable without a federal takeover of the entire tort system.” Blue Cross Blue Shield of Ill. v. Cruz (“Cruz II”), 495 F.3d 510, 514 (7th Cir.2007).
Empire and Cruz are not dispositive because both cases held only that there was no federal jurisdiction arising from complete preemption of state law. As noted above, however, Empire counsels a “cautious” interpretation of the FEHBA preemption clause and both cases established a distinction between the insured’s coverage and benefits and the insurer’s right to subrogation. In addition to the presumption against preemption, this Court’s analysis of whether FEHBA preempts Missouri’s law of subrogation must assess GHP’s right to subrogation with these considerations in mind.
The FEHBA preemption clause provides that contract terms that “relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits)” preempt state law. The operative terms are “relate to,” “coverage” and “benefits.” See Kobold v. Aetna Life Ins., Co., 233 Ariz. 100, 309 P.3d 924, 927 (App.2013)(holding that FEHBA does not preempt Arizona law barring subrogation of personal injury claims).
The term “relate to” generally means “having a connection with.” Kobold, 309 P.3d at 927, citing, Botsford v. Blue Cross & Blue Shield of Mont., Inc., 314 F.3d 390, *456 894 (9th Cir.2002)(interpreting latter half of the FEHBA preemption clause, which provides for preemption of any state law that “relates to” health insurance or plans). When considered in conjunction with Empire’s “cautious interpretation” and the presumption against preemption, the term “relate to” cannot be given a broad, literal interpretation.[1] A broad interpretation of “relate to” would “extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for ‘really, universally, relations stop nowhere.’ ” Kobold, 309 P.3d at 927, citing Roach v. Mail Handlers Benefit Plan, 298 F.3d 847, 849-50 (9th Cir.2002) (quoting N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)).
The term “relate to,” therefore, must be construed as requiring a direct and immediate relationship to the insurance coverage and benefits at issue. Kobold, 309 P.3d at 927. The term “coverage” means the scope of the risks insured under a plan or policy. Black’s Law Dictionary 394 (8th ed.2004) (defining “coverage” as “[ijnclusion of a risk under an insurance policy; the risks within the scope of an insurance policy”). Therefore, the extent of Nevils’ “coverage” consists of the various risks GHP agreed to insure. Nothing in the subrogation provision in the insurance contract affects the extent of insurable risk that GHP accepted. Further, subrogation necessarily occurs after the “coverage” issue is resolved, so subrogation cannot affect the extent, nature or provision of insurance “coverage.” The scope of Nevils’ insurance coverage is neither expanded nor curtailed by requiring him to reimburse GHP from the proceeds of Nevils’ personal injury settlement. As such, sub-rogation does not relate to GHP’s “coverage” of Nevils’ risk of illness or accident. See Kobold, 309 P.3d at 928.
Finally, the term “benefits” means the financial assistance that the insured receives as a consequence of the coverage. Black’s Law Dictionary 167 (defining “benefit” as “[f]inancial assistance that is received from ... insurance ... in time of sickness, disability, or unemployment”). As noted in Empire and Cruz, an insured’s “benefits” are distinct from the insurer’s right to pursue subrogation against the insured’s recovery from a third party tort-feasor. In this context, the term “benefits” includes payments by the insurance carrier on behalf of the insured, not payments to the insured by third parties. The “benefits” to which Nevils was entitled under the insurance plan provided by GHP were not dependent on recovery from a third party. The fact that GHP’s contractual right to reimbursement is triggered by the payment of benefits does not mean that it “relate[s] to the nature, provision, or extent of’ benefits. Kobold, 309 P.3d at 928. This is illustrated, in part, by the fact that Nevils would have been entitled to the same benefits had he never filed suit to recover damages for his injuries. Id. GHP’s right to subrogation affects the parties’ net financial position after the provision of insurance benefits pursuant to the coverage provided in the insurance contract, but it does not affect the scope of coverage or the receipt of benefits. The fact that GHP’s contractual right to reimbursement is triggered by the payment of benefits does not mean that it “relate[s] to the nature, provision, or extent of’ benefits. Id., citing Cruz, 495 F.3d at 514.
*457 The subrogation provision in favor of GHP creates a contingent right to reimbursement and bears no immediate relationship to the nature, provision or extent of Nevils’ insurance coverage and benefits. Contrary to the holding in Buatte, this Court holds that FEHBA does not preempt Missouri law barring subrogation of personal injury claims.[2] The judgment is reversed, and the case is remanded.
RUSSELL, C.J., FISCHER, STITH and DRAPER, JJ., concur; WILSON, J., concurs in separate opinion filed; BRECKENRIDGE, J., concurs in opinion of WILSON, J.

. The presumption against preemption and the attendant requirement of a more narrow interpretation distinguishes the analysis in this case from broader interpretations of the term "relate to” that may be utilized in cases involving a remedial statute.

. Respondents also assert that an OPM "carrier letter” issued in June 2012 is entitled to "substantial deference” pursuant to Chevron USA, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The OPM letter reiterates the agency's position that FEHBA preempts state anti-subrogation rules. Under Chevron, an agency has the power to form policy and make necessary rules when the statute is either silent or ambiguous on an issue. Id. 842-43, 104 S.Ct. 2778. However, “Chevron deference” is typically applied “where an agency rule sets forth important rights and duties, where the agency focuses fully and directly on the issue, where the agency uses notice and comment procedures to promulgate a rule, [and] where the resulting rule falls within the statutory grant of authority.” Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 173, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007). The OPM carrier letter is recent, informal and was drafted in response to litigation challenging the subrogation provision in its contract. While informal agency interpretations of statutes are relevant, there is no indication that Congress delegated to the OPM the authority to make binding interpretations of the scope of the FEHBA preemption clause. The OPM letter is not entitled to the deference described in Chevron and does not establish that FEHBA preempts state anti-subrogation law. See Kobold, 309 P.3d at 929.