

# SUPREME COURT OF MISSOURI
## en banc

Jodie Nevils, )
)
          Nevils, )
)
vs. ) No. SC93134
)
Group Health Plan, Inc., and ACS )
Recovery Services, Inc., )
)
          Respondents. )

Appeal from the Circuit Court of St. Louis County
The Honorable Thea A. Sherry, Judge

### Opinion issued February 4, 2014

Jodie Nevils (Appellant) filed suit against Group Health Plan, Inc., (GHP) and ACS Recovery Services, Inc., (ACS) (collectively Respondents) after Respondents enforced a subrogation lien against Nevils's settlement of a personal injury claim. The trial court, consistent with *Buatte v. Gencare Health Sys., Inc.*, 939 S.W.2d 440 (Mo. App. 1996), entered summary judgment in favor of Respondents on grounds that 5 U.S.C. section 8902(m)(1) of the Federal Employee Health Benefits Act ("FEHBA") preempts Missouri law prohibiting subrogation. Nevils asserts that FEHBA does not preempt state law barring subrogation of personal injury claims because subrogation does not "relate to the nature, provision, or extent of coverage or benefits." This Court holds that

FEHBA does not preempt Missouri law barring subrogation of personal injury claims. The judgment is reversed, and the case is remanded.

## I. **Facts**

GHP entered into contracts with the federal Office of Personnel Management (OPM) to provide health insurance to federal employees pursuant to FEHBA. The contract directs GHP to seek reimbursement or subrogation when an insured obtains a settlement or judgment against a tortfeasor for payment of medical expenses. Nevils was a federal employee with medical insurance offered through a federal employee health benefit plan carried by GHP.

Nevils was injured in an automobile accident. GHP paid Nevils's resulting medical bills. Nevils then recovered a personal injury settlement from the tortfeasor responsible for the accident. GHP, through its agent ACS, asserted a lien against Nevils' settlement in the amount of $6,592.24, seeking reimbursement or subrogation for its payment of Nevils' medical bills resulting from the accident. Nevils satisfied the lien.

Nevils filed a class action petition for damages on behalf of himself and others similarly situated against GHP alleging violation of the Missouri Merchandising Practices Act; unjust enrichment; conversion; and seeking injunctive relief. All claims were based on the premise that Missouri law does not permit the subrogation of tort claims. GHP removed the case to federal court. Nevils filed a motion to remand the case to state court. The federal district court

sustained Nevils' motion on the ground that there was no federal jurisdiction because *Buatte* held that the FEHBA preempts Missouri law barring subrogation.

Following remand to the state court, ACS intervened in the case. Respondents filed a motion for summary judgment. Respondents, relying on *Buatte,* asserted that FEHBA preempted Missouri's anti-subrogation law. The trial court entered judgment for Respondents. This appeal followed.

## II. **Standard of Review**

Nevils' sole point on appeal asserts that the trial court erred in entering summary judgment in favor of Respondents because FEHBA does not preempt Missouri law barring subrogation of personal injury claims. This Court's standard of review for an appeal of a summary judgment regarding a legal issue is de novo. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp*., 854 S.W.2d 371, 376 (Mo. banc 1993).

## III. **Analysis**

Missouri law generally prohibits subrogation in personal injury cases by barring insurers from obtaining reimbursement from the proceeds an insured obtains following a judgment against a tortfeasor. *See Benton House, LLC v. Cook & Younts Ins., Inc*., 249 S.W.3d 878, 882 (Mo. App. 2008). Subrogation in personal injury cases is considered to be against public policy because it amounts to an impermissible assignment of the insured's right to a cause of action for suffering a personal injury. *See Hays v. Mo. Highways & Transp. Comm'n*, 62 S.W.3d 538, 540 (Mo. App. 2001). Therefore, insurance policies with

reimbursement or subrogation clauses are invalid under Missouri law. *Buatte*, 939 S.W.2d at 442.

Although Missouri law generally prohibits subrogation of personal injury claims, FEHBA's preemption clause, 5 U.S.C. section 8902(m)(1), applies to this case and provides:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

Resolution of the issue in this case requires this Court to determine whether Respondents' asserted right to subrogation "relate[s] to the nature, provision or extent of coverage or benefits."

The Supremacy Clause of the United States Constitution provides that state laws and constitutional provisions are preempted when in conflict with federal laws. *See Johnson v. State*, 366 S.W.3d 11, 26-27 (Mo. banc 2012). Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992). When a federal statute regulates an area that is traditionally subject to state authority, courts "should be reluctant to find preemption." *CSX Transp., Inc., v. Easterwood,* 507 U.S. 658, 664 (1993). Preemption analysis, therefore, "is informed by two presumptions about the nature of preemption." *City of Belton v. Smoky Hill Ry. & Historical*

4

*Soc., Inc.,* 170 S.W.3d 429, 434 (Mo. App. 2005), quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). First, it is presumed that the states' historic police powers are not preempted unless it is the clear intent of Congress. *Id*. Second, a court's analysis of the scope of a statute's preemption is determined by the congressional purpose in enacting the statute. *Id*. When two plausible readings of a statute are possible, "we would nevertheless have a duty to accept the reading that dis-favors preemption." *Bates v. Dow AgroSciences, LLC,* 544 U.S. 431, 449 (2005).

In *Buatte*, the Missouri court of appeals held that FEHBA preempted Missouri's law against subrogation because the insurer's right to reimbursement of paid medical bills relates to the "nature, provision, or extent of coverage or benefits." *Buatte*, 939 S.W.2d at 442. The *Buatte* court reasoned that "prohibiting [the carrier] from seeking reimbursement would clearly differ the extent of coverage or benefits." *Id*. *Buatte* rested on the premise that subrogation "relates to" the insurance coverage and benefits. Other jurisdictions have followed the *Buatte* rationale. *See, e.g., Thurman v. State Farm Mut. Auto. Ins. Co.,* 278 Ga. 162, 598 S.E.2d 448, 451 (Ga. 2004); *Aybar v. New Jersey Transit Bus Operations, Inc.,* 305 N.J.Super. 32, 701 A.2d 932, 937 (N.J. 1997).

The continued validity of *Buatte* is called into question by the United States Supreme Court's decision in *Empire Healthchoice Assurance Co. v. McVeigh*, 547 U.S. 677, 698 (2006). In *Empire,* the Supreme Court held that the FEHBA preemption provision did not provide for complete preemption of state law so as to

5

confer federal jurisdiction and, as a result, an insurance carrier's claims raised only state law issues. *Id.* The issue in *Empire* was whether FEHBA completely preempted state law in all insurance carrier disputes arising under the statute. Although the Supreme Court expressly declined to determine whether the statute preempts state subrogation laws two aspects of the Supreme Court's analysis are relevant to Nevils' claim.

First, *Empire* recognized that the FEHBA preemption clause is subject to plausible, alternate interpretations. *Id.* at 697. The Supreme Court noted that the clause "was open to more than one construction" and its "words may be read to refer to contract terms relating to the beneficiary's entitlement (or lack thereof) to [the insurance plan's] payment for certain health-care services [the beneficiary] has received, and not to terms relating to the carrier's post-payments right to reimbursement." *Id*. at 698. The Supreme Court also noted that the "choice-of-law prescription is unusual in that it renders [superior] preemptive contract terms in health insurance plans, not provisions enacted by Congress[]" and that such an "unusual order warrants [a] cautious interpretation." *Id*. *Empire* establishes that the FEHBA preemption clause is susceptible to reasonable, alternate interpretations. The fact that the preemption clause is susceptible to alternate interpretations implicates the presumption against preemption noted in *Bates,* in which the Supreme Court noted that when two plausible readings of a statute are possible, "we would nevertheless have a duty to accept the reading that dis-favors preemption." *Bates,* 544 U.S. at 449 (2005).

Second, the Supreme Court distinguished the provision of insurance coverage and benefits to an insured from an insurer's right to subrogation. Specifically, the Supreme Court noted that while FEHBA contains a preemption clause displacing state law on issues relating to coverage and benefits, FEHBA "contains no provision addressing the subrogation or reimbursement rights of carriers." *Id.* at 683. This distinction is important because *Buatte* is premised on the conclusion that, pursuant to the FEHBA preemption clause, an insurer's contractual right to subrogation under a FEHBA insurance plan relates to "the nature, provision, or extent of coverage or benefits." If an insured's coverage and benefits are separate from the insurer's contractual right to subrogation, then the right to subrogation does not "relate to" coverage and benefits and state subrogation law is not preempted.

The distinction between insurance benefits and subrogation was further explained in *Blue Cross Blue Shield of Illinois v. Cruz*, 495 F.3d 510 (7th Cir.2007), where the court noted that *Empire* "distinguished … between benefits and reimbursement" and reasoned that the amount of benefits to which an insured is entitled is established by the insurance contract while state law regarding subrogation simply affects the amount of a tort judgment the plaintiff gets to keep and how much he or she must give the insurer. *Id.* at 512. Following this rationale, the court then noted that if the term "benefits" as used in the FEHBA preemption clause is understood to include every financial incident of an illness or injury, then "national uniformity is unattainable without a federal takeover of the

7

entire tort system." *Blue Cross Blue Shield of Ill. v. Cruz ("Cruz II")*, 495 F.3d 510, 514 (7th Cir. 2007).

*Empire* and *Cruz* are not dispositive because both cases held only that there was no federal jurisdiction arising from complete preemption of state law. As noted above, however, *Empire* counsels a "cautious" interpretation of the FEHBA preemption clause and both cases established a distinction between the insured's coverage and benefits and the insurer's right to subrogation. In addition to the presumption against preemption, this Court's analysis of whether FEHBA preempts Missouri's law of subrogation must assess GHP's right to subrogation with these considerations in mind.

The FEHBA preemption clause provides that contract terms that "relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits)" preempt state law. The operative terms are "relate to," "coverage" and "benefits." *See Kobold v. Aetna Life Ins., Co*., 309 P.3d 924, 927 (Ariz. App. 2013)(holding that FEHBA does not preempt Arizona law barring subrogation of personal injury claims).

The term "relate to" generally means "having a connection with." *Kobold,* P.3d at 927, citing, *Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390, 394 (9th Cir. 2002)(interpreting latter half of the FEHBA preemption clause, which provides for preemption of any state law that "relates to" health insurance or plans). When considered in conjunction with *Empire's* "cautious interpretation" and the presumption against preemption, the term "relate to"

cannot be given a broad, literal interpretation.[1]  A broad interpretation of "relate to" would "extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for 'really, universally, relations stop nowhere.'"  *Kobold,* P.3d at 927, citing *Roach v. Mail Handlers Benefit Plan*, 298 F.3d 847, 849-50 (9th Cir. 2002) (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)).  The term "relate to," therefore, must be construed as requiring a direct and immediate relationship to the insurance coverage and benefits at issue.  *Kobold,* P.3d at 927.

The term "coverage" means the scope of the risks insured under a plan or policy.  Black's Law Dictionary 394 (8th ed. 2004) (defining "coverage" as "[i]nclusion of a risk under an insurance policy; the risks within the scope of an insurance policy").  Therefore, the extent of Nevils' "coverage" consists of the various risks GHP agreed to insure.   Nothing in the subrogation provision in the insurance contract affects the extent of insurable risk that GHP accepted.  Further, subrogation necessarily occurs after the "coverage" issue is resolved, so subrogation cannot affect the extent, nature or provision of insurance "coverage." The scope of Nevils' insurance coverage is neither expanded nor curtailed by requiring him to reimburse GHP from the proceeds of Nevils' personal injury

---

[1] The presumption against preemption and the attendant requirement of a more narrow interpretation distinguishes the analysis in this case from broader interpretations of the term "relate to" that may be utilized in cases involving a remedial statute.

settlement. As such, subrogation does not relate to GHP's "coverage" of Nevils' risk of illness or accident. *See Kobold,* P.3d at 928.

Finally, the term "benefits" means the financial assistance that the insured receives as a consequence of the coverage. Black's Law Dictionary 167 (defining "benefit" as "[f]inancial assistance that is received from … insurance … in time of sickness, disability, or unemployment"). As noted in *Empire* and *Cruz*, an insured's "benefits" are distinct from the insurer's right to pursue subrogation against the insured's recovery from a third party tortfeasor. In this context, the term "benefits" includes payments by the insurance carrier on behalf of the insured, not payments to the insured by third parties. The "benefits" to which Nevils was entitled under the insurance plan provided by GHP were not dependent on recovery from a third party. The fact that GHP's contractual right to reimbursement is triggered by the payment of benefits does not mean that it "relate[s] to the nature, provision, or extent of" benefits. *Kobold,* P.3d at 928. This is illustrated, in part, by the fact that Nevils would have been entitled to the same benefits had he never filed suit to recover damages for his injuries. *Id.* GHP's right to subrogation affects the parties' net financial position after the provision of insurance benefits pursuant to the coverage provided in the insurance contract, but it does not affect the scope of coverage or the receipt of benefits. The fact that GHP's contractual right to reimbursement is triggered by the payment of benefits does not mean that it "relate[s] to the nature, provision, or extent of" benefits. *Id.,* citing *Cruz*, 495 F.3d at 514.

The subrogation provision in favor of GHP creates a contingent right to reimbursement and bears no immediate relationship to the nature, provision or extent of Nevils' insurance coverage and benefits.  Contrary to the holding in *Buatte,* this Court holds that FEHBA does not preempt Missouri law barring subrogation of personal injury claims.[2]  The judgment is reversed, and the case is remanded.

_____
Richard B. Teitelman, Judge

Russell, C.J., Fischer, Stith and
Draper, JJ., concur; Wilson, J.,
concurs in separate opinion filed;
Breckenridge, J., concurs in opinion
of Wilson, J.

_____

[2] Respondents also assert that an OPM "carrier letter" issued in June 2012 is entitled to "substantial deference" pursuant to *Chevron USA, Inc., v. Natural Resources Defense Counsel, Inc.*, 467 U.S. 837 (1984).  The OPM letter reiterates the agency's position that FEHBA preempts state anti-subrogation rules.  Under *Chevron*, an agency has the power to form policy and make necessary rules when the statute is either silent or ambiguous on an issue.  Id.  842-43. However, "*Chevron* deference" is typically applied "where an agency rule sets forth important rights and duties, where the agency focuses fully and directly on the issue, where the agency uses notice and comment procedures to promulgate a rule, [and] where the resulting rule falls within the statutory grant of authority." *Long Island Care at Home, Ltd. v. Cole*, 551 U.S. 158, 173 (2007).  The OPM carrier letter is recent, informal and was drafted in response to litigation challenging the subrogation provision in its contract.  While informal agency interpretations of statutes are relevant, there is no indication that Congress delegated to the OPM the authority to make binding interpretations of the scope of the FEHBA preemption clause.  The OPM letter is not entitled to the deference described in *Chevron* and does not establish that FEHBA preempts state anti-subrogation law.  *See Kobold*, 309 P.3d at 929.

11



# SUPREME COURT OF MISSOURI
## en banc

Jodie Nevils,                       )
                                 )
          Appellant,            )
                                 )
vs.                               )     No. SC93134
                                 )
Group Health Plan, Inc., and ACS   )
Recovery Services, Inc.,            )
                                 )
         Respondents.        )

## CONCURRING OPINION

Missouri law prohibits a health care insurer from demanding that the insured repay benefits received before the insured recovers from his tortfeasor. GHP contends that Jodie Nevils lost the protection of Missouri law in this regard when he went to work for the federal government. GHP's argument is based on the language of the Federal Employee Health Benefits Act ("FEHBA"), 5 U.S.C. § 8902(m)(1), which purports to subordinate certain aspects of Missouri law not to any federal law but to contract terms negotiated between GHP and the federal Office of Personnel Management ("OPM").

The majority opinion concedes the preemptive power asserted in § 8902(m)(1) and so rejects GHP's argument only by finding that the benefit repayment terms in GHP's contract fail the relatedness test set forth in that statute.

I disagree because the conclusion that contract terms requiring Nevils to repay benefits already received are not related to the nature and extent of Nevils' benefits (and are not related to payments regarding his benefits) is based on the sort of hyper-technical approach that this Court otherwise steadfastly refuses to employ when construing insurance contracts. I do not dissent, however, because I would hold that the preemption language in § 8902(m)(1) is not a valid application of the supremacy clause in article VI of the Constitution of the United States; as a result, it has no effect. Accordingly, FEHBA presents no bar to Nevils' suit, and I concur with the majority opinion that the trial court judgment should be vacated and the case remanded for further proceedings.[1]

---

[1] GHP earlier attempted to remove this case to federal court under 28 U.S.C. § 1441 (federal question removal) because Nevils' claims arise under federal law and under 28 U.S.C. § 1442(a)(1) (federal officer removal) because GHP was acting at the direction of OPM in requiring Nevils to repay the GHP benefits he had received. The district court denied both grounds and remanded the case to state court. *Nevils v. Group Health Plan, Inc.,* No. 4:11 CV 588 DDN (E.D.Mo. June 15, 2011) (2011 WL 8144366). However, the district court's reasoning regarding federal officer removal later was rejected by the Eighth Circuit, which found removal proper because insurers exercise delegated authority under FEHBA. *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1234 (8th Cir. 2012) (citing and rejecting district court's decision in *Nevils*). And, on the second ground, the district court denied removal under the federal question statute because "Missouri law presently does not appear to conflict with the operation of the OPM–GHP Contract." *Nevils*, 2011 WL 8144366 at *6 (citing *Buatte v. Gencare Health Sys., Inc.*, 939 S.W.2d 440 (Mo. App. 1996)). Though the district court foretold that *Buatte* would be overruled as wrongly decided, it held that federal jurisdiction could not be premised on the possibility that a conflict between state and federal law might arise later in the case. *Id.* But now that this Court has overruled *Buatte*, federal question jurisdiction may exist. In rejecting federal court jurisdiction in *McVeigh*, the Supreme Court was careful to restrict its determination to the procedural context before it, i.e., where the insurer sued to enforce its contractual right to subrogation. The Court held that such a claim involved no rights established by Congress or federal common law and that a federal question would arise, if at all, only as a defense to the insurer's claim. Under the "well pleaded complaint" rule, federal question jurisdiction cannot be predicated on an anticipated federal defense. But here, even though Nevils is asserting state law claims, a necessary

2

## I.    Background

Nevils was injured in a car wreck and, as a result, incurred medical bills in excess of $6,600. Those bills were paid by GHP, which managed the health insurance plan for Nevils and other federal employees in Missouri according to terms negotiated between GHP and the "OPM".[2] When Nevils later settled his claim against the driver whose negligence caused Nevils' injuries, GHP demanded that Nevils repay the $6,600 so that GHP did not end up having to pay – and Nevils did not end up receiving – the benefits promised under the plan. Nevils repaid the $6,600.

If Nevils had been paying for health care coverage from GHP while working for any employer in Missouri other than the federal government, GHP would not have been allowed to reduce Nevils' benefits by $6,600 merely because

element of his claims is that GHP had no right to the reimbursement it demanded and obtained. That element plainly depends upon the application (and validity) of § 8902(m)(1). This question of federal law is an essential part of Nevils' claims, not merely an anticipated defense.

[2] GHP is not an insurer in the ordinary sense because it bears no risk regarding Nevils' health care plan. Instead, all of the risk is borne by the United States, and GHP merely manages the plan for a fee. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 703 (2006) (Breyer, J., dissenting). GHP's management duties are set out in its contract with OPM, and this contract also establishes the nature and extent of the employee benefits provided, as well as the circumstances in which the employee must repay those benefits. *Id.* The premiums paid by the government and its employees are held by the United States, not GHP, and are used to pay claims processed by GHP and the other third-party managers ("TPMs"). The proceeds of the benefit repayment terms at issue in this case, and those from similar terms allowing GHP to pursue an enrollee's claims as a subrogee, are not retained by GHP. Instead, they are paid into this same fund and used by the United States to cover premium shortfalls, rebate premiums already paid, reduce future premiums, or increase plan benefits. *Id.* Oddly, GHP does not argue that its role as a TPM (and not as an insurer) should have any affect on the analysis. Nor does GHP argue that the repayment terms at issue here should be treated as benefiting – and, therefore, should be treated as being exercised by – the United States and not GHP.

3

he recovered from his tortfeasor. All parties agree that Missouri law renders void as a matter of public policy any contract provision purporting to give the insurer the right to such repayment. *See, e.g., Schweiss v. Sisters of Mercy*, 950 S.W.2d 537, 538 (Mo. App. 1997) (rejecting as "a distinction without a difference" the argument that "the reimbursement provision at issue in this case is different from [a subrogation provision] because it involves the assignment of the *proceeds,* not an assignment of the *claim.*") (emphasis in the original).[3]

But, in this case, GHP contends that the shoe is on the other foot. Here, GHP claims that it is the terms of its contract with OPM that render Missouri law void, not the other way around. GHP's argument is based upon a provision in FEHBA that governs Nevils' health insurance plan:

> The ***provisions of any contract under this chapter*** which relate to the nature or extent of coverage or benefits (including payment with respect to benefits) ***shall supersede and preempt any State or local law***, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1) (emphasis added).[4]

---

[3] The Supreme Court, too, refused to distinguish between terms requiring subrogation and terms requiring employees to repay benefits received before the employee recovered from a third party. *McVeigh*, 547 U.S. at 693 (noting that federal common law could not displace state tort law governing an insurer's subrogation claim against the tortfeasor and finding no reason "why the two linked provisions – reimbursement and subrogation – should be decoupled").

[4] A final clause reading: "to the extent that such law or regulation is inconsistent with such contractual provisions," was removed by Congress in 1998. Accordingly, "under § 8902(m)(1) as it now reads, ***state law*** – whether consistent or inconsistent with federal [contract terms] – ***is displaced on matters of 'coverage and benefits*.'"* *Empire HealthChoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 686 (2006) (emphasis added).

4

## II. § 8902(m)(1) applies and purports to preempt applicable Missouri law

The majority opinion concedes that, under § 8902(m)(1), the benefit repayment terms in GHP's contract "supersede and preempt" Missouri's law prohibiting them if – but only if – those terms "relate to the nature or extent of [Nevils'] coverage or benefits (including payment with respect to [his] benefits)." Accordingly, the majority opinion preserves the primacy of Missouri law only by declaring that benefit repayment terms have no relationship to the nature or extent of Nevils' benefits and no relationship to payments regarding his benefits. No matter how lenient the "blush test," this construction cannot pass muster.

The majority opinion's construction of the GHP contract uses the type of form-over-substance approach that this Court ordinarily disdains when construing insurance contracts. Here, one part of the GHP contract plainly promises Nevils certain benefits (i.e., payment for covered medical expenses) while another part of the contract takes those benefits away by requiring him to repay these benefits if Nevils later recovers from a third party. This is the classic "give with one hand and take with the other" approach this Court ordinarily decries as a patent ambiguity. *See Behr v. Blue Cross Hosp. Serv., Inc., of Missouri*, 715 S.W.2d 251, 256 (Mo. banc 1986) ("If a contract promises something at one point and takes it away at another there is an ambiguity.") (citing *Lutsky v. Blue Cross Hospital Serv. Inc.,* 695 S.W.2d 870, 875 (Mo. banc 1985)). *See also Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. banc 2007) (noting

5

that *Behr* and *Lutsky* "involved contracts containing contradictory or necessarily inconsistent language in different portions of the instrument").

Leaving aside for the moment the issues of preemption and Missouri's prohibition against benefit repayment terms, if this suit was an action like *McVeigh* in which GHP sought to enforce its contractual right to repayment from Nevils, the Court surely would conclude that GHP's contract contains contradictory and conflicting terms, just as it did in *Behr* and *Lutsky*. Because terms cannot contradict or conflict one another unless they relate to the same subject, it defies logic to insist that benefit repayment terms do not **relate** to the nature or extent of Nevils' benefits. But even if that debate continues, surely everyone would concede that terms requiring Nevils to **pay** benefits back to GHP that GHP previously had **paid** out are terms that relate to "payment with respect to [Nevils'] benefits."

The alternative conclusion that benefit repayment terms are unrelated to benefits because performance of the latter usually is complete before the former are invoked can only be correct as a purely academic exercise. *See Blue Cross Blue Shield of Illinois v. Cruz*, 495 F.3d 510, 514 (7th Cir. 2007) ("the *benefits* are uniform, though the net financial position of an insured who has a potential tort claim is not") (emphasis in original). But this Court usually does not adopt such a stilted construction. *See Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007) (when "construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average

6

understanding if purchasing insurance") (quotation marks omitted); *Robin v. Blue Cross Hosp. Serv., Inc.*, 637 S.W.2d 695, 698 (Mo. banc 1982) ("language used [in insurance contract] will be viewed in light of the meaning that would ordinarily be understood by the layman who bought and paid for the policy") (quotation marks omitted). Here, any ordinary insured would understand that benefit repayment terms are *related* to benefits because he does not care what his "benefits" are if he will not be allowed to keep them. As the Court recognized in *Behr* and *Lutsky*, the insured is concerned with the combined effect of conflicting terms. In other words, to the insured, it is not what you get that matters but what you get to keep.

Of course, this suit is not like *McVeigh*. It was initiated by Nevils, not GHP. After repaying the $6,600 in benefits previously received, Nevils brought common law and statutory consumer fraud claims against GHP based upon its demand that Nevils (and a purported class of other insureds) make the repayments that GHP's contract plainly requires but that Missouri law ordinarily does not allow. But if the terms are related to benefits or payments – and plainly these are – they are related, regardless of which party wants (or does not want) them to be. Accordingly, I cannot join the reasoning of the majority opinion and would hold, instead, that the benefit repayment terms in GHP's contract plainly are related to the nature and extent of Nevils' benefits and, even more plainly, are related to "payment with respect to [Nevils'] benefits" because these terms actually require such a payment.

7

The majority opinion may have been persuaded by GHP's argument that the Supreme Court's decision in *McVeigh* suggests that the relationship between benefit repayment terms and benefits (or benefit payments) is uncertain and, therefore, not clear enough to overcome the presumption against preemption. This is not what *McVeigh* says, nor is it what this case means. *McVeigh* was concerned with whether federal courts have jurisdiction over a FEHBA insurer's contractual right to a benefit repayment, not with whether § 8902(m)(1) applies to such contract terms and preempts state laws that would prohibit them. Accordingly, the analysis in *McVeigh*, including the analysis on which GHP relies, occurs solely in the context of 29 U.S.C. § 1331 and whether that insurer had shown "either that federal law creates the [insurer's] cause of action or that the [insurer's] right to relief necessarily depends on resolution of a substantial question of federal law." *Id.* at 690 (quotation marks omitted).

The Supreme Court noted that nothing in FEHBA creates – or even mentions – the insurer's right to demand repayment of benefits. *Id.* at 696-97 (insurer's claim based solely on contract terms, not FEHBA). Thus, not only did the insurer's claim not arise out of FEHBA or any other federal statute, it also did not depend on the resolution of a federal law question.[5] Accordingly, if federal

---

[5] Under the "well-pleaded complaint" rule, federal court jurisdiction cannot be based on federal questions that are not raised by the plaintiff and will arise (if at all) only as a result of the defendant's answer. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392-93 (1987). Therefore, in *McVeigh*, it was irrelevant for jurisdictional purposes that the insured likely would defend the insurer's repayment claim by asserting New York's prohibition of such terms in insurance contracts, even though that would result in a

jurisdiction were to exist in *McVeigh*, it would only be because the insurer's claim arose under (and was controlled by) previously undetected federal common law in the area of federal employee health benefits so pervasive the Supreme Court reasonably could infer that Congress intended to allow federal court jurisdiction.

Accordingly, the only purpose for which *McVeigh* considers § 8902(m)(1) is to see whether that statute supports an inference that Congress intended to overthrow not just isolated aspects of state law but the entire body of state law that may affect federal employee health benefits. The Supreme Court found the statute inadequate for this purpose.

> [§ 8902(m)(1)] is not sufficiently broad to confer federal jurisdiction. If Congress intends a preemption instruction completely to displace ordinarily applicable state law, and to confer federal jurisdiction thereby, it may be expected to make that atypical intention clear. Congress has not done so here.

*Id*. at 698.

The Court later reaffirmed this holding, stating that the insurer failed to "establish that § 8902(m)(1) leaves no room for any state law potentially bearing

debate over whether § 8902(m)(1) preempts the insured's state law defense. This reasoning does not apply here, however, because this case was brought by Nevils, not the insurer. GHP's earlier efforts to remove this case were unsuccessful because the district court found that Nevils' claim did not depend on the resolution of a disputed federal issue because "Missouri law presently does not appear to conflict with the operation of the OPM–GHP Contract." *Nevils v. Group Health Plan, Inc.*, No. 4:11 CV 588 DDN (E.D.Mo. June 15, 2011) (2011 WL 8144366, at *6) (citing *Buatte*). Now that *Buatte* has been overruled, however, the inapplicability (or invalidity) of § 8902(m)(1) is a federal law question essential to Nevils' claims and not just to an anticipated defense, as in *McVeigh*. In addition, the district court's rationale for rejecting GHP's alternative removal claim under 28 U.S.C. § 1442(a)(1) has been rejected by the Eighth Circuit. *See Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1234 (8th Cir. 2012) (citing and rejecting district court's decision in *Nevils*).

on federal employee-benefit plans in general, or carrier-reimbursement claims in particular" and, therefore, "§ 8902(m)(1) [contains] no prescription for federal-court jurisdiction." *Id.* at 699 (emphasis added). *See also Empire HealthChoice Assur., Inc. v. McVeigh*, 396 F.3d 136, 150 (2d Cir. 2005) *aff'd.* 547 U.S. 677 (2006) ("The preemption provision [§ 8902(m)(1)] does not manifest an intent to supplant all state law with federal common law in cases involving FEHBA-authorized contract provisions.")

In light of the context in which the Supreme Court was evaluating § 8902(m)(1), it is clear that the Court's statements regarding the uncertain reach of the statute had nothing to do with whether the Court believed Congress intended for contractual benefit repayment terms to preempt state law prohibitions of such terms. Instead, those statements reflected only the Court's conclusion that § 8902(m)(1) fails to demonstrate any clear congressional intent to replace the entire body of state law with federal common law. To suggest, as GHP does, that the Supreme Court was indicating that the statute may not apply to benefit repayment terms is a misuse of *McVeigh*.[6]

---

[6]  GHP's reliance on *Blue Cross Blue Shield of Illinois v. Cruz*, 495 F.3d 510 (7th Cir. 2007), also is misplaced. The majority opinion quotes *Cruz* as saying that the Supreme Court in *McVeigh* "distinguished ... between benefits and reimbursement." *Id.* at 513. But *Cruz* makes this comment in the context of recounting the Supreme Court's fruitless search for a basis to infer that Congress intended to displace the entire body of state law in this area with federal common law. The two sentences in *Cruz* immediately before the sentence quoted in the majority opinion make this clear:

> The jurisdictional holding in our previous opinion was based on a belief that Congress in the Federal Employees Health Benefit Act had wanted federal employees to have **the same benefits under their health plan no matter what state they were in**, so that if they moved from one state to

For the reasons stated above, I would hold that Congress plainly intended for § 8902(m)(1) to give preemptive effect to contract terms between OPM and private insurance companies so that terms that require federal employees to repay health insurance benefits received before the employee recovers from the tortfeasor will "supersede and preempt" state laws prohibiting such terms.[7]

### III. § 8902(m)(1)'s attempt at preemption is ineffective

Even though Congress plainly intended for § 8902(m)(1) to apply to the benefit repayment terms in GHP's contract and give such terms preemptive effect, I do not concede that Missouri law must bow to those terms. The idea that Congress claims the power to authorize the executive branch and private insurance companies to negotiate contract terms that Congress decrees – sight unseen – shall "preempt and supersede" state law is such an unprecedented and unjustified intrusion on state sovereignty that it almost defies analysis. *See Arthur D. Little, Inc. v. Comm'r of Health & Hospitals of Cambridge*, 481 N.E.2d 441, 452 (Mass.

---

another they would not have to worry that their entitlement had changed. ***That was an argument for regulating the contracts between the insurers and the government by a uniform body of contract principles, and thus by a federal common law of contracts.*** The Supreme Court distinguished, however, between benefits and reimbursement.
*Id.* at 513 (emphasis added).

[7] To be clear, I would hold that benefit repayment terms not only meet the relatedness test in § 8902(m)(1) in that they relate to the nature or extent of Nevils' benefits (and to payments regarding his benefits), I would hold that Missouri's prohibition against such terms meets the statute's second test requiring that the state law being preempted must "relate[] to health insurance or plans." Nevils does not contest the applicability of this second test, nor could he. Missouri's common law prohibition against terms giving insurers a right to repayment of benefits may be based in the broader policy against subrogation or assignment of personal injury claims, but this well-established prohibition applies directly – not merely incidentally – to "health insurance or plans."

11

1985) ("this court has been unable to locate authority in this or any other jurisdiction which supports the proposition that a contract to which the Federal government is a party somehow constitutes Federal law for the purposes of the supremacy clause").

To be sure, the supremacy clause declares that "the laws of the United States … shall be the supreme law of the land; and the judges in every state shall be bound thereby, ***anything in the constitution or laws of any state to the contrary notwithstanding***."  U.S. Const. Art. VI, cl. 2 (emphasis added).  This Court's duty to uphold the constitution and laws of ***both*** the United States and the State of Missouri mandates that, when the latter conflicts with the former, this Court must apply the supremacy clause and federal law will prevail.

But the supremacy clause assigns primacy solely to federal ***law***.  It does not provide – or even suggest – that the terms of a contract between the federal government and a private insurance company can override Missouri law regarding what terms are (and are not) permitted in contracts covering Missouri employees and their families.  Accordingly, to the extent Congress sought to give preemptive effect to the benefit repayment terms in GHP's contract – and there is no doubt that this is what 5 U.S.C. § 8902(m)(1) does – the supremacy clause does not authorize that effort.

Associate Justice Sotomayor, while a judge on the United States Court of Appeals for the Second Circuit, authored the *McVeigh* decision that was affirmed by the Supreme Court.  There, then-Judge Sotomayor noted that, even though

12

federal courts (like the majority opinion in this case) "generally decide FEHBA

cases as if § 8902(m)(1) were a preemption provision like any other, the provision

is in fact quite unusual, because it provides that certain types of *contract terms*

will 'supersede and preempt' state laws in a particular field." *McVeigh*, 396 F.3d

at 143 (emphasis in original).

Despite the graciously judicial understatement in which she characterizes

FEHBA as "unusual" in this regard, then-Judge Sotomayor explained that the

plain language of FEHBA's preemption provision is unconstitutional:

> Normally, preemption clauses provide that federal *law* will preempt
> state law. A typical provision might provide for preemption, for
> example, by expressly stating that the statute's provisions preempt
> state law, or by prohibiting state law from interfering with a policy
> established in federal law. Regardless of a given provision's
> structure or wording, however, ***we generally take for granted that it
> is law, and not a mere contract term, that carries the preemptive
> force***.

> Though § 8902(m)(1)'s plain language differs from typical
> preemption provisions by unambiguously providing for preemption
> by contract, such ***a literal reading of the provision is highly
> problematic, and probably unconstitutional***, because only federal
> *law* may preempt state and local law. The constitutionality of
> federal preemption is, after all, grounded in the Supremacy Clause of
> the Constitution, which provides that "*the Laws of the United States
> ... shall be the supreme Law of the Land ... any Thing in the
> Constitution or Laws of any State to the Contrary notwithstanding.*"
> U.S. Const. Art. VI, cl. 2. (emphasis added). ***There is no
> constitutional basis for making the terms of contracts with private
> parties similarly "supreme" over state law.***

> ***Taken literally, therefore, FEHBA's preemption provision may fail
> to withstand constitutional scrutiny unless FEHBA-authorized
> contracts themselves are "Laws of the United States." They are
> not.*** "Law" connotes a policy imposed by the government, not a
> privately-negotiated contract. Under FEHBA, the government does

13

not impose contract terms as it would impose a law. Rather, the OPM negotiates the contract terms privately with insurance providers, who are under no obligation to enter into the contracts in the first place. Empire's attempt to portray FEHBA contracts as "law" is unavailing.

*Id.* at 143-44 (citations omitted) (emphasis in the original, bold emphasis added).

The Second Circuit in *McVeigh* did not strike down § 8902(m)(1) as unconstitutional, however. Then-Judge Sotomayor explained that a "saving" construction might cure the statute's patent constitutional defects:

Here, we can reasonably construe § 8902(m)(1) as requiring that, in cases involving the "terms of any contract under [FEHBA] which relate to the nature, provision, or extent of coverage or benefits," *federal law* "shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1). This construction is as faithful as constitutionally possible to the provision's plain language and respects Congress's stated intent to maintain "uniformity" in FEHBA benefits and to "displace State or local law relating to health insurance or plans." **The federal law preempting state law may be federal common law or the FEHBA statute provisions themselves, but it must be law—not contract terms.**

*Id.* at 144-45 (citations omitted) (emphasis in the original, bold emphasis added).

I agree with the analysis conducted by then-Judge Sotomayor and with her conclusion that there "is no constitutional basis for making the terms of contracts with private parties similarly 'supreme' over state law." *Id.* at 143. Accordingly, I would hold that Congress's attempt in § 8902(m)(1) to give GHP's contractual benefit repayment terms preemptive effect over Missouri's law prohibiting such terms is not a valid exercise of the power embodied in the supremacy clause and,

14

as a result, the terms of GHP's contract no more "supersede and preempt" Missouri law than do the terms of any wholly private contract.

After respectful consideration, there is no basis for adopting the saving construction offered by then-Judge Sotomayor. First, as then-Judge Sotomayor later explained, both her analysis of the constitutional infirmities of § 8902(m)(1) and her proposed saving construction were not holdings. *Empire HealthChoice Assur., Inc. v. McVeigh*, 402 F.3d 107, 110 (2d Cir. 2005) (petition for rehearing denied). Second, even assuming that the proposed reading "saves" § 8902(m)(1), it is not a valid "construction" of that statute. Instead, it is a material rewrite that creates a result not only different from that which Congress plainly intended but almost antithetical to it. Congress is well aware of federal common law and the types of statutory frameworks that have been used to justify it. Congress refused to take any of these approaches with § 8902(m)(1) but chose instead the apparently unprecedented path of attempting to assign preemptive force to the terms agreed upon by OPM and its contractual partners. Accordingly, it appears that Congress not only wanted to wrest power over federal employee health care benefits away from the states, but it also was unwilling to cede that power to the courts in the form of a "blank check" authorization to create federal common law.

The final reason to reject the saving construction offered in *McVeigh*, 396 F.3d at 144-45, is that the Supreme Court thoroughly and completely rejected any argument that § 8902(m)(1) implicitly authorizes federal courts to supplant state law with common law of their own making. *McVeigh*, 547 U.S. at 698-99.

Then-Judge Sotomayor may have taken a different path than the Supreme Court, but she reached the same conclusion concerning federal common law despite her proposed savings construction of the statute. *McVeigh*, 396 F.3d at 150 (nothing in § 8902(m)(1) "manifest[s] an intent to supplant all state law with federal common law in cases involving FEHBA-authorized contract provisions").

## IV.    *Conclusion*

For the reasons set forth above, I disagree with the rationale employed by the majority opinion, but I concur in the majority opinion's conclusion that the trial court's judgment must be vacated and the case remanded for further proceedings.[8]

_____
Paul C. Wilson, Judge

---

[8]   The trial court entered judgment for GHP (and its agent, ACS) solely on the basis of *Buatte*. That judgment is now vacated on the ground that § 8902(m)(1) does not apply or – as I would hold – it is not a valid exercise of preemption under the supremacy clause. However, neither the majority opinion nor this concurrence analyze whether the trial court's summary judgment should be affirmed on the alternative grounds raised by GHP in its motion. For example, even assuming that Nevils' consumer fraud claim states a claim for relief notwithstanding GHP's reliance on the express terms of its federal contract, on § 8902(m)(1), and on *Buatte*, such a claim may be barred by section 407.020(2), which exempts from chapter 407 all companies subject to licensure by the department of insurance. However, unless it is clear as a matter of law that none of the pleaded claims can state a claim against any defendant, the better course is to remand the case for further proceedings. *See Hoover v. Mercy Health*, 408 S.W.3d 140, 143 (Mo. banc 2013).

16